# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 23-1996

**ERICK ZANETICH**

Appellant/Plaintiff,

vs.

**WALMART STORES EAST, INC.,** *et al.*

Appellees/Defendants

**APPELLANT'S BRIEF**

APPEAL FROM FINAL JUDGMENT GRANTING MOTION TO
DISMISS ENTERED ON MAY 25, 2023 IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
AT CIVIL ACTION NO. 1:22-cv-05387-CPO-EAP

Justin L. Swidler, Esq. (PA #205954)
SWARTZ SWIDLER LLC
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417

Attorneys for Appellant

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION..................................................................................1

II.   STATEMENT OF ISSUES ..........................................................1

III.  STATEMENT OF RELATED CASES AND PROCEEDINGS ....................3

IV.   STATEMENT OF THE CASE ......................................................4

V.    SUMMARY OF THE ARGUMENT ..............................................6

VI.   STATEMENT OF THE STANDARD OR SCOPE OF REVIEW.................9

VII.  LEGAL ARGUMENT ...............................................................10

      A.   Introduction. ..........................................................10

      B.   The Court applied an incorrect legal test. ...........................14

      C.   CREAMMA Provides an Implied Private Right of Action Under New Jersey Judicial Precedent. ...............................................16

           1.  The district court correctly found that Zanetich was a member of the class for whose special benefit CREAMMA was enacted—weighing in favor of an implied private right of action. .............................................18

           2.  The district court improperly determined that because there was no statutory language either confirming or denying a private right of action, the remaining two *Cort* factors required finding no right of action.........22

           3.  The district court erred in finding that that statutory scheme did not imply the existence of a private right of action. ......................................35

           4.  The three *Cort* factors together demonstrate that the legislature intended to create a private right of action to enforce the consumer and employee protections of the Act..............................................................37

      D.   Other States have found an implied private right of action under their cannabis legalization laws when the laws were silent as to how consumer or employee protections could be enforced. ......................................37

E.    Plaintiff's Common Law Cause of Action would be recognized by the Supreme Court. .............................................................................39

F.    The District Court should have provided Appellant with an Opportunity to Amend the Complaint .............................................43

G.    The Court should grant Plaintiff's Motion to Certify to the New Jersey Supreme Court ...............................................................45

VIII. CONCLUSION ........................................................................47

IX.    CERTIFICATION OF BAR MEMBERSHIP ...............................49

X.    CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF............50

XI.    CERTIFICATE OF VIRUS CHECK..............................................51

XII.  CERTIFICATE   OF   COMPLIANCE   WITH   TYPE-VOLUME LIMITATIONS ........................................................................52

XIII. CERTIFICATE OF SERVICE UPON COUNSEL ......................................53

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Acceptance Ins. Co. v. Sloan*,
  263 F.3d 278 (3d Cir. 2001) ............................................................... 17

*Acoli v. N.J. State Parole Bd.*,
  224 N.J. 213 (2016) ........................................................................... 42

*ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*,
  26 F.4th 716 (5th Cir. 2022) .............................................................. 51

*Alabama v. PCI Gaming Auth.*,
  801 F.3d 1278 (11th Cir. 2015) ......................................................... 27

*Aponte-Correa v. Allstate Ins. Co.*,
  162 N.J. 318 (2000) ...................................................................... 41-42

*Bortz v. Rammel*,
  151 N.J. Super. 312, 376 A.2d 1261 (App. Div. 1977) ............... 27-28

*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979) .............................................................. 24, 25, 26

*Chadwell v. Brewer*,
  59 F. Supp. 3d 756 (W.D. Va. 2014) ............................................... 43

*Chance v. Kraft Heinz Foods Co.*,
  No. K18C-01-056 NEP, 2018 Del. Super. LEXIS 1773, 2018 WL 6655670 .. 44

*Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*,
  724 F.2d 369 (3d Cir. 1983) .............................................................. 10

*Cort v. Ash*,
  422 U.S. 66 (1975) ............................................................................ 26

*Covington v. Cont'l Gen. Tire, Inc.*,
  381 F.3d 216 (3d Cir. 2004) .............................................................. 18

*Delta Funding Corp. v. Harris*,
  426 F.3d 671 (3d Cir. 2005) .............................................................. 51

*First Pac. Bancorp, Inc. v. Helfer*,
  224 F.3d 1117 (9th Cir. 2000) .......................................................... 34

iv

*Freeman Expositions, L.L.C. v. Eighth Judicial Dist. Court*,
    520 P.3d 803 (Nev. 2022) ................................................................ 43

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ...................................................................... 32

*Hakimoglu v. Trump Taj Mahal Assocs.*,
    70 F.3d 291 (3d Cir. 1995) .......................................................... 51

*Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*,
    537 F. Supp. 3d 852 (E.D. Pa. 2020) ........................................ 44

*Ind. Prot. & Advoc. Servs. v. Ind. Family & Soc. Servs. Admin.* ,
    603 F.3d 365 (7th Cir. 2010) ...................................................... 27

*Jarrell v. Kaul*,
    223 N.J. 294 (2015) ...................................................................... 20

*L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ.*,
    189 N.J. 381 (2007) ...................................................................... 16

*La. Landmarks Soc'y v. City of New Orleans*,
    85 F.3d 1119 (5th Cir. 1996) ...................................................... 27

*LabMD Inc. v. Boback*,
    47 F.4th 164 (3d Cir. 2022) ........................................................ 49

*Lally v. Copygraphics*,
    85 N.J. 668, 428 A.2d 1317 (1981) ...................................... 15, 30

*Maw v. Advanced Clinical Commc'ns, Inc.*,
    179 N.J. 439, 846 A.2d 604 (2004) ............................................ 45

*MHA, L.L.C. v. Amerigrroup Corp.*,
    539 F. Supp. 3d 349 (D.N.J. 2021) ............................................ 18

*Mulford v. Comput. Leasing*,
    334 N.J. Super. 385 (?County? Cnty. Ct. 1999) ........................ 30

*Noffsinger v. SSC Niantic Operating Co.*,
    273 F. Supp. 3d 326 (D. Conn. 2017) ........................................ 44

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. Withumsmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ...................................................... 51

*Palmiter v. Commonwealth Health Sys., Inc.*,
    2021 PA Super 159 ........................................................................... 44

*Parks v. Pep Boys*,
    282 N.J. Super. 1, 659 A.2d 471 (App. Div. 1995) ........................... 27

*Peper v. Princeton Univ. Bd. of Trs.*,
    151 N.J. Super. 15, 376 A.2d 535 (App. Div. 1977) ................... 14, 30

*Pierce v. Ortho Pharm. Corp.*,
    84 N.J. 58 (1980) ...................................................................... *passim*

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255 (2001) ......................................................................... 27

*Resolution of State Com. of Investigation*,
    108 N.J. 35 (1987) ........................................................................... 20

*Sabatino v. St. Aloysius Par.*,
    288 N.J. Super. 233 (App. Div. 1996) .............................................. 48

*Sargent v. Columbia Forest Prods.*,
    75 F.3d 86 (2d Cir. 1996) ................................................................ 52

*Simon v. FIA Card Servs., N.A.*,
    732 F.3d 259 (3d Cir. 2013) ............................................................ 10

*Sims v. Halliburton Co.*,
    No. 98-6300, 1999 U.S. App. LEXIS 15713 (10th Cir. July 14, 1999) ..... 51-52

*State v. Gomes*,
    253 N.J. 6 (2023) ....................................................................... 16, 38

*Steele v. Louisville & N.R. Co.* ,
    323 U.S. 192 (1944) ........................................................................ 34

*Steinberg v. Sahara Sam's Oasis, L.L.C.*,
    226 N.J. 344, 142 A.3d 742 (2016) .................................................. 50

*Touche Ross & Co. v. Redington* ,
    442 U.S. 560 (1979) ................................................................. 26-27, 27

*Wild v. Carriage Funeral Holdings, Inc.*,
    458 N.J. Super. 416 (App. Div. 2019) .............................................. 50

*Winslow v. Corp. Exp., Inc.*,
    364 N.J. Super. 128, 834 A.2d 1037 (App. Div. 2003) ......................... 15, 19, 30

*Zanetich v. Wal-Mart Stores E., Inc.*,
    No. 1:22-cv-05387, 2023 U.S. Dist. LEXIS 91570 (D.N.J. May 25, 2023)
    ............................................................................................................ 12, 13

## Statutes

28 U.S.C. § 1291 ................................................................................... 1
28 U.S.C. § 1332 ................................................................................... 1
N.J. Stat. Ann. § 24:6I-24, *et al.* ................................................... *passim*
N.J. Stat. Ann. § 24:6I-32, *et al.* ................................................... *passim*

## Rules

Fed. R. App. P. 32 .............................................................................. 57
Fed. R. Civ. P. 12 ............................................................................. 5, 6
N.J. Sup. Ct. R. 2:12A-1 ............................................................... 50-51

## I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

On June 13, 2022, Plaintiff/Appellant Erick Zanetich ("Plaintiff" or "Zanetich") filed this putative class action in the Superior Court of New Jersey, Gloucester County, against Defendants/Appellees ("Defendant" of "Walmart") asserting violations of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA") and New Jersey common law.  On September 2, 2022, Defendant removed the claim to the District Court of New Jersey. The District Court had subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because diversity of citizenship existed between the parties and the amount in controversy exceeded $75,000 as required by 28 U.S.C. § 1332(a).

This Court of Appeals has appellate jurisdiction. This is an appeal from the final judgment and related orders entered by the Honorable Christine P. O'Hearn, USDJ, who entered judgment for Defendant on all claims and dismissed Plaintiff's claims on the merits in their entirety.

The order is appealable as a final order disposing of all claims under 28 U.S.C. 1291. Plaintiff timely filed the Notice of Appeal on May 30, 2023.

## II.    STATEMENT OF ISSUES

1. Did the Court err in holding that no private right of action exists under CREAMMA, and specifically, N.J. Stat. Ann. § 24-6I-52 (2021)?

1

2. Did the Court err in holding Walmart did not violate the common law of the state of New Jersey when it revoked Zanetich's offer of employment and terminated Zanetich for testing positive for marijuana?

3. Did the Court err in not granting leave for Plaintiff to amend his complaint when it granted Defendant's 12(b)(6) motion?

4. Should the Court certify the questions of whether CREAMMA supports a private right of action and/or whether the common law provides a remedy to employees whose offers of employment are rescinded in violation of CREAMMA to the Supreme Court of New Jersey?

## III.   STATEMENT OF RELATED CASES AND PROCEEDINGS

The instant case is before this Court for the first time. Counsel is unaware of any related case decided or pending before this Court or any other court.

## IV.    STATEMENT OF THE CASE

Since February 22, 2021, and continuing through at least June of 2022, Walmart has enforced its Drug & Alcohol Policy ("Policy") with respect to all individuals seeking to work for Walmart in New Jersey. Pursuant to Walmart's Policy, "any applicant or associate who tests positive for illegal drug use may be ineligible for employment." App. 30. Pursuant to the Policy, Walmart considers marijuana to be an illegal drug and subjects individuals who test positive for marijuana to adverse employment actions. *Id.*

On or around January 21, 2022, Zanetich applied for employment with Walmart to work in the Asset Protection Department of Defendant's facility in New Jersey. App. 31. Walmart provided Zanetich an offer of employment with a start date of February 7, 2022, subject to him submitting to and passing a drug test. *Id.* Zanetich's drug test result showed he tested positive for cannabis and no other drugs. *Id.* Walmart notified Zanetich via a termination letter that it had rescinded his offer because he tested positive for cannabis. *Id.*

Pursuant to the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), which went into effect on February 22, 2021, "[n]o employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment

4

because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items, and an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid …." N.J. Stat. Ann. § 24:6I-52 (2021).

On June 13, 2022, Zanetich filed this putative class action in the Superior Court of New Jersey, Gloucester County, against Walmart asserting violations of the CREAMMA and New Jersey common law.   On September 2, 2022, Defendant removed the claim to the District Court of New Jersey. Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on October 7, 2022. On May 25, 2023, the District Court granted Defendant's motion and dismissed this action, holding that CREAMMA did not permit a private right of action, and that Plaintiffs could not assert a failure-to-hire/termination claim in violation of public policy pursuant to *Pierce.* Plaintiff filed his notice of appeal on May 30, 2023.

Plaintiff alleges that Walmart's actions violated CREAMMA and the public policy of New Jersey.  The District Court determined that CREAMMA contains no private right of action.  The Court further determined that New Jersey common law does not prohibit an employer from rescinding an offer of employment, even where the reason for its decision violates the public policy of New Jersey. The Court did not provide Plaintiff an opportunity to amend to plead alternative causes of action.

5

## V.    SUMMARY OF THE ARGUMENT

CREAMMA, which went into effect on February 22, 2021, provides that "[n]o employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee" for using cannabis or cannabis items, and shall not subject any employee to any adverse action solely due to the presence of cannabinoid metabolites in the employee's bodily fluid. N.J. Stat. Ann. § 24:6I-52 (2021).

In January 2022, Plaintiff applied to work for Defendant, and was extended an offer of employment subject to the successful passing of a drug test. Plaintiff took that drug test, and tested positive for cannabis use, and negative for every other drug on the test. App. 31. On February 12, 2022, Walmart rescinded Plaintiff's job offer. *Id.* When Plaintiff inquired as to the reason for the rescinded job offer, Walmart's Human Resources department explained that it was because Plaintiff had tested positive for cannabis. *Id.*

Plaintiff filed the instant action in the Superior Court of the State of New Jersey, Gloucester County, on June 13, 2022, and Defendant removed the action to the United States District Court for the District of New Jersey on December 9, 2022, asserting federal jurisdiction under CAFA. Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on October 7, 2022. On May 25, 2023, the District Court granted Defendant's motion and dismissed this action, holding that

6

CREAMMA did not permit a private right of action, and that Plaintiffs could not assert a failure-to-hire/termination claim in violation of public policy pursuant to *Pierce.* Plaintiff filed his notice of appeal on May 30, 2023.

The District Court erred in dismissing Plaintiff's action by misconstruing CREAMMA and New Jersey common law. The district court, rather than broadly interpreting CREAMMA and its legislative intent, refused to infer a private right of action despite recognizing that its refusal rendered the challenged statutory language meaningless.

In reaching this incorrect decision, the District Court relied on an improper legal principle. Rather than applying the straightforward test which requires federal courts to predict how the state's highest court would rule on an issue of first impression under state law, the District Court concluded that federal courts should interpret state laws **more** conservatively than how it predicts the state court would construe the same law. This rule of construction constitutes plain reversible legal error.

The district court's errors were further compounded by failing to recognize that New Jersey courts have consistently found that employee protection statutes of general application have implied private rights of action. Misreading the relevant New Jersey precedent, the district court's decision deviates sharply from New Jersey precedent finding inferred private rights of action in employment statutes such as the

New Jersey Law Against Discrimination (as originally enacted), and the New Jersey Wage Payment and Collection Law (as originally enacted).

With respect to Plaintiff's *Pierce* claim, the District Court erred in failing to find that *Pierce* extends to terminations, failures to hire, and other adverse employment actions brought to vindicate the public policy embedded in CREAMMA's employment protections.

The District Court further erred by dismissing Plaintiff's claims with prejudice without permitting Plaintiff to file an amended complaint. Even if Plaintiff could not allege a private CREAMMA claim or a *Pierce* claim, Plaintiff could still assert various common law actions in which the violation of CREAMMA would be a relevant factor, such as negligence or contract actions. This Court should remand to permit Plaintiff to do so.

Finally, the District Court affirmatively stated it believed certification of this issue to the New Jersey Supreme Court would be appropriate. Plaintiff agrees. Certification of this issue to the New Jersey Supreme Court will definitively resolve this issue and is warranted given the importance of this issue.

Plaintiff respectfully requests this Court certify the questions of whether CREAMMA supports a private right of action and whether the common law provides a remedy to employees whose offers of employment are rescinded in violation of CREAMMA to the Supreme Court of New Jersey. Plaintiff further

requests the Court reverse the district court, reinstate Plaintiffs' complaint, and

remand for further proceedings.

## VI.  STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

This Court reviews a district court's prediction of how a state's highest court

would interpret its state law as follows:

> [W]e should review the district judge's prediction as a determination of law, as to which our review is plenary …. Using a plenary standard of review is appropriate because the district judge in a diversity case is determining the law of the forum. The district judge's holding is only a prediction of what law the state's highest court would adopt, rather than an actual holding of state law that a state judge could give. There is nothing in this difference, however, that affects our standard of review. By predicting what law the state would adopt, the district judge announces the law which controls the case before him. We believe that this determination of law, like any other determination of law binding the parties to the case, should be reviewed by a plenary standard.

*Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*, 724 F.2d 369, 371-72 (3d Cir. 1983).

This Court reviews the grant of a Motion to Dismiss as follows:

> Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). We review de novo an order granting a Rule 12(b)(6) motion. *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 765 (3d Cir. 2013).

*Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 264 (3d Cir. 2013).

## VII.  LEGAL ARGUMENT

### A.  <u>Introduction.</u>

It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded …. For it is a settled and invariable principle in the laws of England, that every right, when withheld, must have a remedy, and every injury its proper redress.

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163-66 (1803) (quoting 3 WILLIAM

BLACKSTONE, COMMENTARIES 23).

In February 2021, the New Jersey Legislature enacted the New Jersey

Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act

("CREAMMA"), codified at N.J.S.A. 2C:35-5 to -10 and N.J.S.A. 24:6I-24.

CREAMMA was enacted in response to a Constitutional amendment approved by

the voters of New Jersey in November 2020. To effectuate CREAMMA's stated

purpose and the Constitutional amendment to legalize adult cannabis use, the New

Jersey Legislature also enacted a broad general protection of employees prohibiting

employers from refusing to hire, disciplining, or discharging them solely because

they use cannabis. N.J. Stat. Ann. § 24:6I-52 (2021).

Since CREAMMA's enactment, it has been illegal in New Jersey for

employers to refuse to hire potential employees because they test positive for

cannabis on a pre-employment drug test. Despite this clear and unequivocal right,

the district court below, in a matter of first impression, held that those victimized by

this violation of law have no remedy. In so holding, the district court effectively vetoed the protections the New Jersey Legislature explicitly provided to the employees of its state, acknowledging that its ruling rendered the provisions of the law "meaningless." *See* App. 23. The Court should reverse.

Below, Plaintiff's complaint indisputably asserted that Walmart violated CREAMMA. Plaintiff pled that he applied to work for Defendant in its loss prevention department in January 2022. Following an interview, Walmart offered him the position, and required that he undergo a drug test as a condition of hire. He took the test, and, ultimately, was told that his offer was being rescinded because had tested positive for cannabis (and for no other drug). Plaintiff pled that Defendant's unlawful conduct violated CREAMMA and New Jersey common law, which forbids employers from rescinding at-will employment contracts when doing so violates the public policy of New Jersey. The district court, after finding that the Legislature had created a law specifically aimed at protecting individuals like Plaintiff, held that there was no implied private right of action in CREAMMA, and therefore dismissed Plaintiff's claim under CREAMMA as a matter of law. It further wrongly interpreted New Jersey common law to determine that an employer may rescind an at-will employment contract, even if doing so is in breach of a public policy, where the employee's offer is rescinded *prior* to the employee's first day of work.

The decision below constitutes error and must be reversed.

In narrowly construing New Jersey employment protections, the district court erred. First, despite the U.S. Supreme Court and this Court repeatedly admonishing that federal courts sitting in diversity cases must interpret state laws based on their prediction of how a state's highest court would interpret the law, the district court below explicitly limited itself to a restricted analysis that prejudiced its reasoning, wrongly holding that: "federal courts should be even less inclined than state courts to imply private rights of action from state statutes and regulations." App. 13.

Importantly, the district court conceded that its ruling "essentially renders the language of the employment provision meaningless," App. 23-24, invited a New Jersey state court to "depart from its prior precedent rejecting a failure-to-hire common law *Pierce* claim given that the statute at issue here announces a public policy referencing failure to hire, *id.*, and noted that, if appealed, the Third Circuit might certify these questions to the New Jersey Supreme Court. *Id*.

The Court should reject the district court's narrow construction of CREAMMA and Plaintiff's *Pierce* claim, and instead hold CREAMMA allows an aggrieved employee to vindicate its protections in a private civil action, and that the *Pierce* common law exception to at-will employment in connection with violations of public policy should extend, *at minimum,* to failure-to-hire cases where an offer

of employment has been made and is rescinded for a reason which breaches public policy.

Importantly, the employment provisions of CREAMMA are directly analogous to the myriad civil rights statutes which enact general protections for individuals, and with respect to these statutes, the New Jersey courts have **<u>readily</u>** and **<u>consistently</u>** found these statutes contain an implied right to a private action. When the New Jersey Law Against Discrimination ("NJLAD") was first enacted, it did not have an express private right of action. Despite this, in *Peper v. Princeton Univ. Bd. of Trustees,* 151 N.J. Super. 15, 23, 376 A.2d 535, 539 (App. Div. 1977), *reversed on other grounds,* 77 N.J. 55, 389 A.2d 465 (1978), New Jersey courts found that a private right of action was implied despite statutory language that only authorized administrative remedies, where the "mandate of the law was unequivocal." Here, similarly, CREAMMA's employment protection mandates are unequivocal.

Similarly, as to Plaintiff's *Pierce* claim, the district court erred in concluding *Pierce* could not be used to vindicate failure to hire claims as to questions of public policy. This Court should reverse this determination for two reasons. First, where the "failure to hire" is the result of the failure to satisfy an unlawful condition for hire, but for which the individual in question was hired, even the traditional understanding of *Pierce* would apply because a valid employment contract is being

breached in pursuit of a violation of public policy. Second, the public policy in question here explicitly prohibits failing to hire someone for this action. Given same, and given the underlying basis for any *Pierce* claim, which is premised on (a) the need for stability in labor relationships, *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 66 (1980); (b) the need to protect non-union-represented individuals from abusive employer practices, *id.* at 67; and (c) the capacity of the common law to develop and adapt to current needs, *id.* at 71, this Court should find that *Pierce* claims extend to failures to hire where the failure to hire is itself, by virtue of statute, a violation of the public policy of the State of New Jersey. Finally, the district court should have provided Plaintiff with the opportunity to amend his complaint prior to dismissing the action with prejudice.

For all these reasons, the district court's judgment should be vacated.

**B.    The Court applied an incorrect legal test.**

As the district court correctly noted, "[n]o court ha[d] yet considered whether CREAMMA provides an implied right of action." App. 8.

Where a federal court sits in diversity and is tasked with interpreting a state law, the district court "must predict how the state court would resolve these issues should it be called upon to do so." *Acceptance Ins. Co. v. Sloan*, 263 F.3d 278, 282 (3d Cir. 2001), quoting *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 459 (3d Cir. 1993).

Rather than attempting to predict how the New Jersey Supreme Court would rule, however, the district court erroneously held that as a federal court, it should be "*even less inclined than state courts* to imply a private right of action…" App. 13 (emphasis added).  The court, in reaching this incorrect legal conclusion, ignored binding Third Circuit precedent and instead quoted language contained in *MHA, LLC v. Amerigrroup Corp.*, 539 F. Supp. 3d 349 (D.N.J. 2021), which itself was quoting *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 572 (D.N.J. 2008).  But *Beye* did not hold that, when a federal court must answer whether a state law has an implied right of action, it should apply a stricter test than would be applied in state court.  *Beye* instead held that, where a federal court can avoid opining on a difficult question of first impression under state law, it should defer ruling.  *Beye*, 568 F. Supp. 22d at 572.  *Beye*, unlike the district court below, deferred ruling on whether an implied right of action existed under the state law at issue.[1] Moreover, *Beye* made clear that if it was "required to determine whether the Parity Law provides an implied cause of action, the Court [would], **of course**, **apply the test as applied by New Jersey courts**." *Id.* (emphasis added); *see also See Covington v. Continental Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) ("we must predict how the New Jersey Supreme Court would rule if faced with the issue").

---

[1] As provided herein, Plaintiff Zanetich requests this Court defer such a ruling by certifying this important question of state law to the New Jersey Supreme Court rather than answer this question in the first instance.

Deciding that it would apply a judicially-invented policy of extra restraint for federal courts finding implied rights of action in state statutes, the district court failed to follow the Appellate Division's admonishment that New Jersey courts "**readily** [find] an implied private right of action in statutes enacted to protect employees from wrongful conduct by employers." *Winslow v. Corp. Exp., Inc.,* 364 N.J. Super. 128, 137, (App. Div. 2003) (emphasis added).

The district court's opinion explicitly provided that its analysis as to whether to apply a private right of action under CREAMMA was guided by "**federal** courts' reluctance to interpret a statue statute to create a private right of action." App. 13. This guiding principle was incorrect as a matter of law, failed to follow New Jersey law precedent that New Jersey "readily" implies a private right of action in employment protection statutes, and resulted in the district applying the wrong legal standard when it incorrectly held no private right of action existed under CREAMMA.

### C.     CREAMMA Provides an Implied Private Right of Action Under New Jersey Judicial Precedent.

New Jersey precedent (based on long-standing common law principles and federal precedent) supports finding a private cause of action, and the balance of the evidence suggests the legislature intended to create such a right of action when it passed CREAMMA.

The doctrine of implied private rights of action is an ancient one, ultimately stemming from English common law and the principle that "where there is a legal right, there is also a legal remedy, by suit or action at law, wherever that right is invaded." 3 William Blackstone, Commentaries On The Laws Of England 23 (1783). "Both the United States Supreme Court and [the New Jersey Supreme] Court have held that a statute that does not expressly create a private cause of action may, nonetheless, implicitly create one." *Jarrell v. Kaul*, 223 N.J. 294, 307 (2015) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975), and *In re: State Comm'n of Investigation*, 108 N.J. 35, 40-41 (1987)).

New Jersey courts employ a three-prong test that inquires: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any evidence the legislature intended to create or deny a private right of action under the statue; (3) whether implication of a private cause of action in this case would be consistent with the underlying purposes of the legislative scheme. *In re: State Comm'n of Investigation*, 108 N.J. at 41 (adopting and modifying the *Cort* factors to New Jersey statutory construction).

Here, a private right of action is implied because: (1) CREAMMA created a class of individuals for whose special benefit the employment protection provisions of the statute was enacted, and Plaintiff is a member of that class; (2) the legislative history of the statute and the statute's structure is evidence the legislature intended

the employment protections to be vindicated through a private right of action, not administrative enforcement; and (3) implication of a private cause of action would be consistent with the underlying purposes of the legislative scheme, because it would allow for effective, timely, and efficient enforcement of the employment protections of the statute through private actors.

Finally, other factors courts consider when determining whether an implied private right of action exists in a statute also support finding one in the instant case. These factors include: (1) whether the statute confers a "right" on the plaintiff; (2) whether failure to find an implied cause of action would leave plaintiffs "remediless;" and (3) whether the statute has other enforcement mechanisms within it. Here, because the statute at issue is a prohibitory civil rights statute that confers a specific right on employees like Zanetich, and because the failure to find an implied cause of action would leave such employees remediless, these factors also support finding that CREAMMA contains a private right of action.

1. **The district court correctly found that Zanetich was a member of the class for whose special benefit CREAMMA was enacted—weighing in favor of an implied private right of action.**

The district court correctly found that "the first *Cort* factor weighs in favor of finding an implied cause of action" for employees who are terminated in violation of CREAMMA's employment protection provisions. App. 12. This Court should

also find that the first *Cort* factor weighs in favor of finding an implied right of action.

CREAMMA was enacted to benefit adult users of cannabis in several ways, including through employment protections. Accordingly, the first *Cort* factor is satisfied. CREAMMA's first substantive section lists 15 findings and declarations explaining the purpose behind the enactment of the act. The first declaration states "it is the intent of the people of New Jersey to adopt a new approach to our marijuana policies by controlling and legalizing a form of marijuana, to be referred to as cannabis, in a similar fashion to the regulation of alcohol for adults." N.J. Stat. § 24:6I-32(a). Many of the declarations and findings confirm that CREAMMA is intended to benefit adult users of cannabis, focusing on how the criminalization of cannabis use can have debilitating effects on, for instance, the job prospects and financial health of cannabis users, and noting that New Jersey cannot sacrifice individuals' civil rights by continuing to keep cannabis unlawful. *Id.* at § (n), (o).

Adult cannabis users are further protected by Sections 51 and 52 of the Act. Section 51 is entitled "Licensee and Consumer Protections" and provides broad protections for adult cannabis users throughout all areas of modern society, including housing, education, employment, medical care, and having a family:

> The presence of cannabinoid metabolites in the bodily fluids of a person engaged in conduct permitted under P.L.2021, c.16 (C.24:6I-31 et al.):

(1) with respect to a student, tenant, or employee, other than as set forth in section 48 of P.L.2021, c.16 (C.24:6I-52), shall not form the basis for refusal to enroll or employ or lease to or otherwise penalize that person, unless failing to do so would put the school, employer, or landlord in violation of a federal contract or cause it to lose federal funding;

(2) with respect to a patient, shall not constitute the use of an illicit substance resulting in denial of medical care, including organ transplant, and a patient's use of cannabis items may only be considered with respect to evidence-based clinical criteria; and

(3) with respect to a parent or legal guardian of a child or newborn infant, or a pregnant woman, shall not form the sole or primary basis for any action or proceeding by the Division of Child Protection and Permanency, or any successor agencies; provided, however, that nothing in this paragraph shall preclude any action or proceeding by the division based on harm or risk of harm to a child or the use of information on the presence of cannabinoid metabolites in the bodily fluids of any person in any action or proceeding.

N.J. Stat. § 24:6I-51.

These protections for adult cannabis users are clarified in even greater detail in Section 52, entitled "Employers, Driving, Minors and Control of Property." The first part of this section provides as follows:

(1) **No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items,** and an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid from engaging in conduct permitted under P.L.2021, c.16 (C.24:6I-31 et al.).

N.J. Stat. § 24:6I-52(a)(1) (emphasis added).

20

This section makes clear that not only is CREAMMA intended to benefit adult users of cannabis, but it is specifically intended to protect adult users of cannabis who apply for employment. In CREAMMA's legislative history, the Assembly described these sections as CREAMMA's "Consumer and Employee Protections, and Employer Workplace Policies," and stated that, if passed, "an employer would not be permitted to refuse to hire or employ a person, or discharge or take any adverse action against an employee because that person or employee does or does not use cannabis items." A. Appropriations Committee Report on A.21, Nov. 19, 2020, at 20, *available at* *https://www.njleg.state.nj.us/bill-search/2020/A21/bill-text?f=A0500&n=21_S2*.

Accordingly, it is self-evident that the first *Cort* factor supports Plaintiff and militates strongly in favor of a private right of action. The U.S. Supreme Court has referred to the first factor as "the threshold question under *Cort*" and stated that the question is answered by looking to the statutory language itself. *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979). In *Cannon*, the Supreme Court compared an 1893 railway safety law which referred to "any employee of any such common carrier" to the provision in the Voting Rights Act which provided that "no person shall be denied the right to vote for failure to comply [with a new state enactment covered by, but not approved under § 5" to the language in Title IX which provided that "no person ... shall, on the basis of sex be ... subjected to

discrimination under any education program or activity receiving Federal financial assistance." 441 U.S. at 681-82, 689-90.

Here too, CREAMMA identifies a special class of individuals—individuals who use cannabis items—and enacted broad employment protections for this class. Plaintiff is a member of this class. Just like the 1893 railroad safety law, the Voting Rights Act, and Title IX, CREAMMA "explicitly confers a benefit" on the protected class, and plaintiff is "clearly a member of that class for whose special benefit the statute was created." *See Cannon*, 441 U.S. at 694.

Accordingly, this Court should hold, just as the district court held below, that the first factor supports finding an implied private right of action for Zanetich.

> **2.** **The district court improperly determined that because there was no statutory language either confirming or denying a private right of action, the remaining two *Cort* factors required finding no right of action.**

The district court incorrectly applied the second *Cort* factor by finding that, because the statute was silent on whether the employment provisions contain a private right of action, the Legislature did not intend to provide a private right to employees like Zanetich. The court then relied on the exact same rationale—that the statute was silent as to whether a private right of action existed—to determine the third *Cort* factor could not be met.  In so holding, the district court essentially held that a federal court can never find an implied private right of action exists in a state statute.  Such a holding is incorrect as a matter of law.

The district court's determination that this factor weighed against Plaintiff was based entirely on the fact that the statute contained no explicit provision either providing or denying a private right of action. This was error, both because: (1) *Cort* held that legislative intent should be implied in the absence of specific statutory language where the statute confers a right to a class of individuals; and (2) New Jersey courts have regularly found intent to confer a private right of action in employment law statutes which confer rights to employees and which are otherwise silent on whether a private right of action exists.

> a. ***Cort* holds that where the law grants a class of persons certain rights, the second factor is satisfied unless the statutory language explicitly disavows a private right of action.**

First, the New Jersey Supreme Court followed the test espoused in *Cort*, which held that "in situations in which it is clear that … law has granted a class of persons certain rights, **it is not necessary to show an intention to create a private cause of action**, although an explicit purpose to deny such cause of action would be controlling." *Cort*, 422 U.S. at 82 (emphasis added), quoted in *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694 (1979); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979) (private right of action may be inferred where "the statute in question at least **prohibited certain conduct or created … rights** in favor of **private parties**") (emphasis added).

23

In *Cannon*, the Supreme Court noted that Title VI and the Voting Rights Act all created implied private cause of action through use of the rights-creating language. *Id.* 441 U.S. at 694-99. Other courts have looked for similar right-creating language. *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1296 (11th Cir. 2015); *see also Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365, 383 (7th Cir. 2010). The Fifth Circuit has described this "rights creating" language as "the most accurate indicator of the propriety of implication of a cause of action." *La. Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1124 (5th Cir. 1996).

The New Jersey Supreme Court agreed that statutes with "rights creating" language that lack explicit remedies are the statutes in which it is most appropriate to infer an implied private cause of action. In *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, the New Jersey Supreme Court cited approvingly to prior New Jersey Superior Court decisions holding that violation of a statute without a civil remedy creates a private right of action if the legislative provision is for the benefit of plaintiff's class of persons. 168 N.J. 255, 274 (2001) (*citing to Parks v. Pep Boys*, 282 N.J. Super. 1, 15, 659 A.2d 471 (App. Div. 1995); *Bortz v. Rammel*, 151 N.J. Super. 312, 321, 376 A.2d 1261 (App. Div. 1977), *certif. denied,* 75 N.J. 539, 384 A.2d 518 (1977); *Restatement (Second) of Torts* § 874A).

24

Here, the district court erred by failing to give appropriate weight to the rights-creating language of CREAMMA as an indicator of legislative intent. Instead, though it correctly found that CREAMMA contained explicit rights-creating language for individuals like Plaintiff, it improperly determined that there was not an implied right of action solely because the statutory language was silent on whether such individuals could bring such claims. *See* App. 12 ("Plaintiff, as a cannabis user, is part of the class for whose special benefit CREAMMA was enacted.")

The district court, in applying *Cort*, failed to consider that because CREAMMA created a class of persons with certain rights, the court should have found the second *Cort* factor weighed in favor of finding a private right of action unless explicit statutory language prohibited such finding. To find otherwise is illogical and inconsistent with the court's analysis quoted immediately above. By recognizing that CREAMMA was enacted to grant a legal right to Plaintiff and other cannabis users, it follows that the legislative intent was to provide this benefit. The district court's opinion, by its own acknowledgment, renders such protection void, and robs individuals like Plaintiff of the very rights that the Legislature *by clear statutory language* intended to convey. App. 20.

Thus, the Court's failure to recognize that because the law provided an explicit protection to individuals who, like Plaintiff, work in New Jersey and use cannabis,

it should not have assumed that the absence of explicit language conferring a private right of action weighed against inferring such right to individuals like Plaintiff.

> **b.** **The district court erred when determining that its ruling was consistent with how New Jersey courts have interpreted other state employment laws.**

In wrongly deciding that the legislative intent did not create a private right of action, the court found notable that "other employment statutes adopted by the New Jersey legislature … explicitly provide for a private cause of action."  App. 17-18. In support of this finding, the district court referenced statutory language found in the Conscientious Employee Protection ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD").  *Id.*

While the district court was correct that those two employment laws explicitly include private rights of actions contained in their statutory language, the district court failed to consider how New Jersey courts have – consistently – implied a private right of action when construing state employment laws which failed to explicitly provide a private cause of action or remedy despite providing specific employment rights to New Jersey employees.

Indeed, with respect NJLAD, the district court failed to recognize that the statutory language conferring a private right of action was added *after* the law's enactment, and that prior to such language being added, the Appellate Division held that an implied private right of action existed. *Peper v. Princeton Univ. Bd. of*

*Trustees*, 151 N.J. Super. 15, 23 (App. Div. 1977), *reversed on other grounds,* 77 N.J. 55, 389 A.2d 465 (1978) (private right of action was implied despite statutory language only authorizing administrative remedies, where the "mandate of the law was unequivocal")

Similarly, in *Winslow v. Corp. Exp., Inc.*, 364 N.J. Super. 128, 136 (App. Div. 2003), the New Jersey Superior Court Appellate Division reaffirmed that the Wage Payment Act contained an implied right of action, because "even in the absence of a statutory provision … **our courts have readily found an implied private right of action in statutes enacted to protect employees from wrongful conduct by employers**."; *see also Mulford v. Computer Leasing, Inc.,* 334 N.J. Super. 385, 394 (Law Div. 1999) (Because "[e]mployees are the obvious special beneficiaries of the [Wage Payment Law]," this statute should be read to "impliedly confer[] on employees a private right of action in court against employers . . . to protect and enforce their rights thereunder.").

Further, in *Lally v. Copygraphics*, 85 N.J. 668, 670-71, (1981), the New Jersey Supreme Court affirmed the reasoning of *Peper* in finding that there was implied private of action to vindicate wrongful terminations for retaliation for filing a workers' compensation claim, such retaliation being illegal under the Workers' Compensation statute.

27

Importantly, that some employment laws contain explicit remedies was also true when the New Jersey Supreme Court ruled in *Peper,* when the New Jersey Appellate Division ruled in *Winslow,* and when the Superior Court ruled in *Lally—all of which are published state court decisions.* The court's holding below is inconsistent with how the New Jersey Supreme Court and Appellate Division have addressed similar issues with similar employee protection statutes.

Indeed, the consistent interpretation from New Jersey courts in applying private rights of actions in employment statutes follows the rule of *Cort*; because employment laws provide specific rights to classes of individuals, the legislature's silence in providing a private right of action exists does not weigh against finding an intent to convey such a right where, in the absence of same, the specific right the legislature intended to provide would be evaded. *See* App. 20 (acknowledging that its decision "essentially renders the language of the employment provision meaningless").

Accordingly, the clear New Jersey case law precedent of finding implied private rights of action for employment protection statutes further demonstrates that the district court's holding that the New Jersey Supreme Court would not find a private right of action existing in a similar rights-creating employment provision of CREAMMA was error. Indeed, the lower court's holding nullifies the very protection that the Legislature explicitly provided to New Jersey cannabis users,

protecting them from having their employment rescinded solely because of a positive screen for cannabis given in a pre-employment drug test.

**c.    The district court failed to consider that CREAMMA conveys specific and definite rights to cannabis users in New Jersey, strongly implying intent to create a private enforcement mechanism.**

The Court further erred by failing to consider the specific, individually-focused rights-creating language of CREAMMA, strongly supporting a finding that the legislature intended to create a private right of action for individuals like Plaintiff, who were provided specific rights under CREAMMA.

Specifically, the Supreme Court has held that a "critical" consideration in whether the legislature intended to create a private right of action is whether the challenged provision contains definite and specific rights-creating language. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).  Where a statute uses individually focused language conferring specific private rights to individuals, as opposed to statutory language which only benefits such individuals indirectly as third-party beneficiaries, the legislative intent should be inferred. *Id.* ("[R]ights-creating" language critical to showing the requisite congressional intent to create new rights. ("Unlike the individually focused terminology of Titles VI and IX ("no person shall be subjected to discrimination"), FERPA's provisions speak only to the Secretary of Education, directing that "no funds shall be made available" to any "educational agency or institution" which has a prohibited "policy or practice." This focus is two

29

steps removed from the interests of individual students and parents and clearly does not confer the sort of "*individual* entitlement" that is enforceable under § 1983"). The Supreme Court has held that the existence of such specific and individually focused rights-conferring language is "critical" to the analysis of whether Congress intended to convey a private right of action. *Id.*

Here, the legislative intent to private a private right of action is clear from the statute. The law clearly and definitively provides specific protections to individuals and forbids specific conduct of private employers. CREAMMA, N.J. Stat. § 24:6I-52(a)(1) ("No employer shall refuse to hire or employ **any person** … because **that person** does or does not smoke, vape, aerosolize or otherwise use cannabis items, and **an employee shall not be subject to any adverse action** by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid…") (emphasis added).

The district court's failure to consider such language when finding that no such intention existed constitutes reversible error.

> **d.    The district court's failure to recognize that where a private right of action is required to provide meaning to specific statutory language, legislative intent to permit a private right of action should be implied.**

The district court further erred by failing to give appropriate weight to the consequence of interpreting CREAMMA's employment protections as failing to

provide a private right of action: namely, that those protections would cease to exist, rendering the explicit statutory language meaningless.

Where a statutory scheme provides no means to enforce its provisions apart from an implied private right of action, "it is appropriate to infer [the legislature] did not intend to enact unenforceable requirements" and "it is fair to imply a private right of action from the statute at issue." *First Pac. Bancorp., Inc. v. Helfer*, 224 F.3d 1117, 1126 (9th Cir. 2002); *see also Steele v. Louisville Nashville R.R.*, 323 U.S. 192, 207 (1955) (finding that where a statute prohibited unions from discriminating against minority workers, but provided for no enforcement mechanism, it was appropriate to infer a judicially implied remedy). Here, CREAMMA provides no enforcement mechanisms for the employment protection provisions of the Act.

Below, the district court agreed that without a private right of action, the explicit statutory language enacted by the legislature to provide employment protections to individuals including Plaintiff were "essentially render[ed] … meaningless." App. 23. Indeed, the court found that its decision refusing to permit harmed individuals from enforcing their rights under CREAMMA rendered the employment protections "illusory" and breached that statutory scheme of CREAMMA. App. 23-24 ("If the State expects this statutory scheme to work and for these stated protections from adverse employment action not to be illusory, the Legislature, CRC, or the Supreme Court of New Jersey must act.").

31

Accordingly, the statutory structure of CREAMMA's employment protections support the second *Cort* factor that the Legislature intended individuals to be able to vindicate their CREAMMA employment protection rights themselves, through a private civil action, the same as they can vindicate in court their right to be free of racial discrimination, their right to their pay, their right to file workers' compensation claims without fear of reprisal.

> **e.** **The district court's holdings are inconsistent with the New Jersey's Supreme Court's directive of the legislature's intent when enacting CREAMMA.**

The New Jersey Supreme Court has held that the "litany of findings expressed in N.J.S.A. 24:6I-32(a) through (o) … reflect a **clear legislative intent** to construe CREAMMA and its companion bills **broadly and robustly** so as to achieve their remedial purposes." *State v. Gomes*, 253 N.J. 6, 33 (N.J. 2023) (emphasis added).

The district court's opinion that the Legislature's intent to create a private right of action could not be inferred, even though the lack of a private right of action rendered the employment provisions "illusory" and "meaningless" is flatly inconsistent with the Supreme Court's decision in *Gomes*, requiring courts to construe the statue in a manner which the "clear legislative intent to construe CREAMMA … broadly and robustly so as to achieve [its] remedial purpose[]." *See id.*

32

Thus, for this reason as well, the district court's holdings that CREAMMA employment provisions should be rendered illusory must be reversed.

> **f.    The district court's reliance on the fact that a different law passed on the same day, which specifically disclaimed the right to bring a private right of action, demonstrated legislative intent to disclaim a cause of action in CREAMMA is illogical.**

Curiously, the district court found that because a different law, "Certain offenses not to be considered in making employment decision," N.J. Stat. § 34:6B-21 ("ONTBC") was "signed into law on the same day as CREAMMA[,] contained a similar employment provision, [and] expressly disclaimed the intent to create a private cause of action … supports the [c]ourt's conclusion" that the legislature did not intend for individuals whose rights were violated under CREAMMA to bring such actions. App. 18-19.

ONTBC forbids employers from considering the criminal histories of certain prior offenders; it contains no language similar to CREAMMA's which provides rights to cannabis users who fail pre-employment drug screens due to their lawful use of marijuana. *Compare* ONTBC, N.J. Stat. § 34:6B-21(a) with CREAMMA, N.J. Stat. § 24:6I-52(a)(1). Furthermore, ONTBC provides the Labor Commissioner with enforcement authority, and empowers the Commissioner to issue civil penalties ranging from $1,000 - $10,000 per violation. N.J. Stat § 34:6B-21(b). As discussed above and as the district court acknowledged, without a private right of action, there

is no mechanism to enforce the employment protections provided by CREAMMA.

N.J. Stat. § 24:6I-52(a)(1).  Finally, ONTBC disclaims any private right of action;

CREAMMA's statutory language is silent. *Compare* ONTBC, N.J. Stat. § 34:6B-

21(c) with CREAMMA, N.J. Stat. § 24:6I-52(a)(1).

This court's finding that ONTBC's explicit disclaimer of a private right of

action implies that no right of action exists in CREAMMA where no such language

was provided, and where no other enforcement mechanism was created, is wholly

illogical.  First, when courts consider the statutory language of other statutes to

determine the import of a specific phrase (or lack thereof) in another statute, the

logical inference is that the legislature will act consistently.  Thus, that a similar

statute signed on the same day explicitly disclaimed a private right of action would

imply that CREAMMA, which contains no disclaimer, was intended to provide a

private enforcement mechanism.  Said differently, if the Legislature's explicit

rejection or private cause of action in ONTBC is of any moment, it implies that its

decision to not explicitly foreclose private causes of action in CREAMMA was

intentional and should be construed to permit such actions.

Second, as the district court itself noted in its flawed analysis, unlike

CREAMMA, ONTBC contains an enforcement provision; by empowering the

Commission of Labor and Workforce Development to file summary proceedings

seeking civil penalties against a violating employer ranging from $1,000-$10,000

per violation.  Thus, not only did the Legislature disclaim any private right of action in ONTBC, it also provided an enforcement mechanism such that its decision to disallow a private right of action would not render ONTBC meaningless.

Thus, if anything, the statutory language of ONTBC supports finding a private right of action to enforce the employment provisions of CREAMMA.  The district court's analysis on this issue is wholly flawed and contributed to its error.

### 3.    The district court erred in finding that that statutory scheme did not imply the existence of a private right of action.

As the district court correctly noted, "the third factor requires a finding that it is consistent with the legislative scheme to infer the existence of [a private right of action]."  App. 21. But rather than consider the statutory scheme, including the purpose of the employment provision and whether the statute provided alternative means of enforcement, the court relied solely on the absence of statutory language conferring a private right of action is establishing that a private right of action was inconsistent with the statutory scheme.  Under the district court's logic, this test could never be met—*Cort* only applies where a statute is silent as to whether a private right of action exists.  But per the logic of the district court, the silence of the statute means that implying a private right of action would be inconsistent with the statute.  App. 21.

Indeed, even though the district court incorrectly found when analyzing the *Cort* factors that implying a private right of action was inconsistent with CREAMMA, App. 21, it also found, just two pages thereafter, that without a private right of action, it cannot be "expect[ed] [for] the statutory scheme to work…." App. 23-24. Rather, the court acknowledged that its construction rendered the statutory language "meaningless" and "illusory." *Id.*

The New Jersey Supreme Court "has held that statutory construction that will render ***any*** part of a statute **inoperative**, superfluous or **meaningless**, is to be avoided." *Aponte-Correa v. Allstate Ins. Co*., 162 N.J. 318, 335 (N.J. 2000) (emphasis added); *Acoli v. N.J. State Parole Bd.,* 224 N.J. 213, 231 (N.J. 2016) ("statutory construction abhors an interpretation that would render meaningless words within a statute")

Because the district court recognized that its holding would render the employment protections of CREAMMA meaningless and illusory and that failing to find a private right of action which prevent the statutory scheme from working, the district court's finding that the third *Cort* factor weighed against finding an implied right of action

However, creating employee protections without creating a process for enforcing these protections would undermine the statutory scheme. Accordingly, the private right of action is consistent with the purpose.

36

4.     **The three *Cort* factors together demonstrate that the legislature intended to create a private right of action to enforce the consumer and employee protections of the Act.**

The *Cort* factors are meant to ultimately be used as a canon of statutory construction to themselves infer whether the legislature intended to implicitly create a private cause of action to remedy violations of the rights-conferring portions of a particular act. Here, the foregoing analysis shows that the legislature intended such a result. Accordingly, the Court should find that CREAMMA contains a private right of action based on the *Cort* factors.

D.     **Other States have found an implied private right of action under their cannabis legalization laws when the laws were silent as to how consumer or employee protections could be enforced.**

Finding an implied private right of action for the violations of CREAMMA's employee protections would be consistent with the other state courts which have interpreted similar statutes which were similarly silent and found that these statutes nevertheless contained a private right of action. In this context, *Zanetich* is a significant outlier. Most courts to examine this issue with respect to other states' cannabis laws which do not contain explicit private rights of action have nevertheless found that persons whose individual rights are violated are entitled to their day in court.

For instance, in *Whitmire v. Wal-Mart Stores Inc.,* 59 F. Supp. 3d 761, 775-76 (D. Ariz. 2019), a court construing Arizona's medical cannabis statute found that

it had an implied cause of action because one was needed to implement the statutory directive. The Supreme Court of Nevada likewise found the Nevada legislature intended to provide a private right of action to implement employee protections contained in Nevada's medical cannabis law, where the act "provides that the Division of Public and Behavioral Health … is tasked with enforcing many provisions, but the chapter is silent as to enforcement regarding employment issues[.]" *Freeman Expositions, LLC v. Eighth Judicial Dist. Court*, 520 P.3d 803, 808-09 (Nev. 2022).

The Rhode Island Superior Court reached a similar result construing a provision nearly identical to CREAMMA's consumer and employment protections in its cannabis law. *Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 R.I. Super. LEXIS 88, at *20-21 (Super. Ct. May 23, 2017). Noting that this was the only section in the statute which referenced employers, and reaching the non-controversial determination that "the General Assembly expected [this provision] to be enforced," the court found that there was an implied private right of action for violations of the employee protection provisions. *Id.* at *24.

Similarly, the intermediate Pennsylvania appellate court found that the state's legislature intended to provide an implied private cause of action for the employment discrimination prohibition in Pennsylvania's medical cannabis law. *Palmiter v. Commonwealth Health Systems, Inc.*, 2021 PA Super 159 (Pa. Super. Ct. 2021). The

Eastern District of Pennsylvania reached a similar result a year earlier with respect to the same law. *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp. 3d 852, 860 (E.D. Pa. 2020). Moreover, the District Court of Connecticut held an implied right of action to enforce Connecticut's cannabis law's employee protections exists, *Noffsinger v. SSC Niantic Operating Co.*, 273 F. Supp. 3d 326, 338-40 (D. Conn. 2017), and the Delaware Superior Court held same with respect to Delaware's law in *Chance v. Kraft Heinz Foods Co.*, 2018 Del. Super. LEXIS 1773, 2018 WL 6655670, at *6 (Del. Super. Ct. 2018).

As noted, while these decisions are not binding, they are a persuasive cross-check that states with significantly less generous employment protections than New Jersey (*i.e.,* Pennsylvania has still not raised its minimum wage from the federal floor of $7.25 an hour) have found little difficulty in finding that their legislatures intended their cannabis laws to permit private enforcement of employment protections even absent an explicit grant of such authority.

### E.   Plaintiff's Common Law Cause of Action would be recognized by the Supreme Court.

The district court further erred when it determined that Zanetich could not bring a claim under New Jersey common law, despite the Supreme Court's holding more than 40 years ago that employers may not terminate an at-will employment contract in violation of a "clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.,* 84 N.J. 58, 65, (1980). "A 'clear mandate' of public policy suggests an analog

to a constitutional provision, statute, and rule or regulation *promulgated pursuant to law* such that ... there should be a high degree of public certitude in respect of acceptable versus unacceptable conduct." *Maw v. Advanced Clinical Commc'ns, Inc.*, 179 N.J. 439, 846 A.2d 604, 607 (N.J. 2004).

Here, CREAMMA clearly provides that an individual may not have a job offer rescinded solely due to testing positive for cannabis in a pre-employment drug screen. [$$$].  Thus, CREAMMA establishes that Walmart's conduct in rescinding Zanetich's job offer was in breach of public policy.

The district court nevertheless reasoned that because Plaintiff had not yet begun employment when his employer terminated his at-will employment contract, he could not rely on *Pierce* to support a common law claim.  Such rationale puts form over substances and fails to recognize the underlying purpose and rationale of *Pierce.*

In *Pierce,* the New Jersey Supreme Court grounded the cause of action within the context of the at-will nature of the employment contract. *Pierce v. Ortho Pharm. Corp.,* 84 N.J. 58, 65 (1980). The Supreme Court in *Pierce* explained that a wrongful termination claim asserting a breach of a public policy mandate can be considered as claim in contract or a claim in tort.  "An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee" in a manner which violates a clear mandate of public policy." *Id.* at 72.  Meanwhile,

an action "in tort may be based on the duty of an employer not to discharge an employee" in a manner "that is a violation of a clear mandate of public policy." *Id.* Finding that the common law supports such a claim, the Supreme Court stated that "[e]mployees will be secure in knowing that their jobs are safe if they exercise their rights in accordance with a clear mandate of public policy. On the other hand, employers will know that unless they act contrary to public policy, they may discharge employees at will for any reason." *Id.* at 73.

*Pierce* involved an employee who asserted he was discharged because he objected to working on medical testing that involved a controversial, though not harmful, substance.   *Id.* The Supreme Court ultimately determined that there was no clear mandate of public policy prohibiting the use of such substance in medical testing, and therefore ruled against the employee.  There is no reason to conclude from the language contained in *Pierce* that *Pierce* would have been decided differently had the individual voiced such complaints after receiving a job offer, but before his first day of work.

Here, Plaintiff alleges he was provided a conditional offer of employment, which he accepted, and he would have been employed by Defendant but for the illegal condition, *i.e.,* the unlawful drug test. In other words, Plaintiff alleges that there was an employment contract at issue which was rescinded/breached in violation of public policy. This "breach of contract" supplies the necessary privity

of contract to take Plaintiff's claim out of a simple failure to hire claim (for instance, if Defendant pre-announced its intention not to hire cannabis users and Plaintiff never applied) into a sufficient contractual relationship to warrant applying even a classic *Pierce* claim.

Accordingly, regardless of whether *Pierce* would apply or be extended to pre-offer applicants screened out of employment for cannabis usage, here, an employment contract existed between Plaintiff and Defendant, and, accordingly, the values balanced in *Pierce*—the expectations and ability of employees to both work and comply with the mandates of public policy, the policing of abusive employers, the public's interest in the stability of employment—all are equally applicable to the instant matter.

While the New Jersey Supreme Court has not weighed in on whether *Pierce* extends to failure-to-hire claims, *Pierce*'s reasoning supports extending the cause of action to the failure-to-hire context in the limited context where a prospective employer affirmatively disqualifies a large swath of applicants for a reason that violates a clear mandate of public policy—and the public policy is itself a **<u>restriction on refusing to hire the specific class of people to which the Plaintiff belongs</u>**. No such policy was at issue in the cases cited by the district court.

The cases relied on by the district court do not stand for the contrary position. The only published appellate division case which touches on this question is

*Sabatino v. St. Aloysius Parish*, 288 N.J. Super 233 (App. Div. 1996). In that case, an individual challenged the decision of a religious institution for not hiring her to a new position following restructuring. *Pierce* is mentioned only in the final paragraph in the decision, in passing. The single sentence that "*Pierce* has not been applied to failure to hire or promote cases" fails to analyze the holdings of *Pierce*, and more importantly, does not provide indication as to whether the Appellate Division or the Supreme Court would view a firm job offer contingent on a term that breaches a clear mandate of public policy to give rise to a claim under *Pierce*. The remaining authorities cited by the district court—none published, all are in a similar vein; they do not involve the recission of a firm job offer, nor do they analyze or consider the policies and rationale behind *Pierce*.

Thus, because the Supreme Court's holdings in *Pierce* demonstrates that employers may not terminate at-will employment contracts in breach of public policy, it follows that an employer may not terminate such an at-will contract *even where* the employee has not yet begun working. The court's holding that predicting the Supreme Court would rule in the alternative is incorrect and should be reversed.

**F.    The District Court should have provided Appellant with an Opportunity to Amend the Complaint**

"In civil rights cases, district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim." *LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) (internal alterations

omitted) (quoting *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)).

Here, the District Court dismissed Zanetich's Complaint with prejudice and without providing him with an opportunity to file an amended complaint. Had the District Court done so, Zanetich could have pursued a remedy for Walmart's conduct under alternative legal theories, including breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with prospective economic relationship, negligence, and negligence *per se,* and infringement on Plaintiff's right to privacy. Even where a law does not provide for a private right of action under that law, the law may still allow for evidence of the violation to establish violations of law under other theories of recovery. *See, e.g., Wild v. Carriage Funeral Holdings, Inc.*, 458 N.J. Super. 416, 428 (Super. Ct. App. Div. 2019) (holding that even if Compassionate Use Act did not provide for a private right of action against disability discrimination, the legalization of medical cannabis could be vindicated through a disability action brought under NJLAD)*; Steinberg v. Sahara Sam's Oasis, LLC,* 226 N.J. 344, 361-62, 142 A.3d 742, 752-53 (2016) (violations of standards meant to protect individuals may be considered as evidence of negligence in a common-law cause of action).

Accordingly, even if this Court otherwise affirms the District Court's holdings, it should remand the case to provide Zanetich with the opportunity to file an amended complaint.

### G.    The Court should grant Plaintiff's Motion to Certify to the New Jersey Supreme Court

Pursuant to L.A.R. 110.1, Appellant moves this Court to certify the above questions of law to the New Jersey Supreme Court. This Court may certify a question of law to the New Jersey Supreme Court "if the answer may be determinative of an issue in litigation pending in the Third Circuit and there is no controlling appellate decision, constitutional provision, or statute in this State." New Jersey Supreme Court Rule 2:12A-1. As this Court's decisions on questions of state law effectively may "make important state policy, in contravention of basic federalism principles," certification of such questions to a state's high court is prudent when this Court is unable to predict with confidence how such court would decide a question. *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 302 (3d Cir. 1995) (Becker, J., dissenting).

Generally, this Court has certified questions to a state's high court in such situations, refusing to rely on mere speculation as to how the high court would decide a question of state law. *See, e.g., Delta Funding Corp. v. Harris*, 426 F.3d 671 (3d Cir. 2005); *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 312 (3d Cir. 2012) (certifying question where this Court was "reluctant to speculate about how [the New Jersey Supreme

Court] would rule."); *see also* Gregory L. Acquaviva, *The Certification of Unsettled Questions of State Law to State High Courts: The Third Circuit's Experience*, 115 Penn St. L. Rev. 377, 389-97 (2010).

When faced with a similarly unsettled question regarding whether a state's law provides an implied private right of action, the Fifth Circuit certified the question to Texas' supreme court, based in part on the question being "a close one." *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 26 F.4th 716, 719 (5th Cir. 2022); *cf. Sims v. Halliburton Co.*, 1999 U.S. App. LEXIS 15713, *24-25 (10th Cir. 1999) (declining to certify question of whether a statute provided an implied private right of action based on confidence in being able to predict how the Texas high court would rule). In *Sargent v. Columbia Forest Prods.*, the Second Circuit had "confidently predicted the Vermont Supreme Court would not imply a private right of action under its workers' compensation statute" only to recall its mandate following the Vermont Supreme Court deciding the opposite. 75 F.3d 86, 89 (2nd Cir. 1996) (At this time, Vermont provided no mechanism for certification).

Neither the New Jersey Supreme Court nor the New Jersey Superior Court – Appellate Division has decided whether CREAMMA provides an implied private right of action or whether *Pierce* provides a common law cause of action for an at-will employee whose job offer is contingent on passing a pre-employment drug screen for marijuana, in violation of the public policy

46

embodied in CREAMMA. As explained in detail above, the jurisprudence regarding whether an implied right of action is provided by a New Jersey statute strongly supports finding one in CREAMMA and this Court should be confident in holding same. Nevertheless, due to the import of the question and that no state precedent exists, this Court should certify the following questions to the New Jersey Supreme Court: 1) do the employment protections contained in CREAMMA provide for an implied right of action; and 2) may an individual who has a job offer rescinded for reasons which are in violation of CREAMMA bring a cause of action for same under the state's common law.

## VIII. CONCLUSION

As set forth above, the statutory language of CREAMMA and New Jersey jurisprudence regarding when a statute provides an implied private right of action supports recognizing that CREAMMA provides such a right. Moreover, the Court should hold that an individual whose job offer was rescinded due to testing positive for cannabis may bring a common law claim for wrongful termination of an at-will employment contract in breach of the clear mandate of public policy embodied in CREAMMA.

Accordingly, for all of the above reasons, the Court should vacate the district court's Order and Opinion dismissing the instant matter, reinstate Appellant's Complaint, and remand this case for further proceedings.

By:    */s/ Justin L. Swidler*

Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
SWARTZ SWIDLER LLC
9 Tanner Street, Ste. 101
Haddonfield, NJ 08033

Attorneys for Plaintiff Erick Zanetich

Dated: August 14, 2023

48

## IX.    CERTIFICATION OF BAR MEMBERSHIP

I, Justin Swidler, Esq. certify that I am a member of the Bar of the U.S. Court of Appeals for the Third Circuit.

## X.    CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF

I, Justin Swidler, Esq. certify that the Brief emailed/filed to the Clerk's Office and the hard copies mailed to the Clerk's office and served on all parties are identical.

## XI.   CERTIFICATE OF VIRUS CHECK

I, Justin Swidler, Esq. certify that this Brief was scanned for viruses using

Avast! Free Antivirus.

## XII. CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because the brief contains 10,918 words including the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Office 2010 in 14 pt Times New Roman font.

## XIII.  CERTIFICATE OF SERVICE UPON COUNSEL

I, Justin Swidler, Esq., hereby certify that I have on this date served a true and correct copy of the Brief of Appellant and Appendix upon Appellee's counsel via Electronic Filing.