**No. 23-1996**

# In the United States Court of Appeals
## FOR THE THIRD CIRCUIT

ERICK ZANETICH, *on behalf of himself*
*and those similarly situated,*
PLAINTIFF-APPELLANT,

*v.*

WAL-MART STORES EAST, INC., *doing business as*
WALMART, INC., *and* SAM'S EAST, INC., *doing business*
*as* SAM'S CLUB FULFILLMENT CENTER
DEFENDANTS-APPELLEES.

On Appeal From The United States District Court
For The District Of New Jersey
Case No.1:22-cv-05387
The Honorable Christine P. O'Hearn

### BRIEF OF DEFENDANTS-APPELLEES WAL-MART
### STORES EAST, INC. AND SAM'S EAST, INC.

TRACEY E. DIAMOND
CHRISTOPHER J. MORAN
LEIGH H. MCMONIGLE
CARLY ROTHMAN SIDITSKY
TROUTMAN PEPPER
HAMILTON SANDERS LLP
301 Carnegie Center
Suite 400
Princeton, NJ 08540-6227
(609) 951-4235 (TD)
(215) 981-4169 (CM)
(215) 981-4627 (LM)
(609) 951-4140 (CRS)
tracey.diamond@troutman.com
christopher.moran@troutman.com
leigh.mcmonigle@troutman.com
carly.siditsky@troutman.com

MISHA TSEYTLIN
*Counsel of Record*
(WI BAR NO. 1102199)
KEVIN LEROY
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Attorneys for Defendants-*
*Appellees*

## United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. 23-1996
_____

ERICK ZANETICH

v.

WAL-MART STORES EAST, INC. d/b/a WALMART, INC.,
and SAM'S EAST, INC., Sam's Club Fulfillment Center

### Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

WAL-MART STORES EAST, INC. d/b/a WALMART, INC., et al.,

(Name of Party)

      1) For non-governmental corporate parties please list all parent corporations: Sam's East Inc. is 100% owned by Sam's West, Inc., which is 100% owned by Walmart Inc.  Wal-Mart Stores East, LLC is 100% owned by Walmart Inc.

      2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:
Sam's East, Inc. (improperly identified in the Complaint as Sam's East, Inc. d/b/a Sam's Club Fulfillment Center)  is a non-governmental corporate entity and is 100% owned by Sam's West, Inc., which in turn is 100% owned by Walmart Inc., which is publicly traded.

Wal-Mart Stores East, LLC is a non-governmental corporate entity and is 100% owned by Walmart Inc., which is publicly traded.
      3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:
N/A

      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.
N/A

s/ Misha Tseytlin

(Signature of Counsel or Party)

Dated: 06/14/2023

rev: 09/2014                    (Page 2 of 2)

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ................. 2

INTRODUCTION ................................................................................... 2

STATEMENT OF THE CASE ............................................................... 4

    A. Legal Background ....................................................................... 4

    B. Factual And Procedural Background ......................................... 9

SUMMARY OF ARGUMENT .............................................................. 13

STANDARD OF REVIEW .................................................................... 20

ARGUMENT ......................................................................................... 22

  I. New Jersey's CREAMMA Does Not Confer An Implied Cause Of Action, Under The *Cort* Factors ............................................. 22

    A. There Is No Evidence That The Legislature Intended To Create A Private Right Of Action Under CREAMMA .............. 25

    B. Inferring A Private Right Of Action Under CREAMMA Would Be Inconsistent With The Underlying Purposes Of The Legislative Scheme ............................................................ 35

    C. Plaintiff Is Not A Member Of The Class That The Legislature Enacted CREAMMA To Especially Benefit .......... 39

    D. Plaintiff's Additional Arguments, Which Are Not Tied To Any Of The *Cort* Factors, Are Legally Meritless ...................... 42

  II. New Jersey Common Law Does Not Recognize A Claim From A Prospective Employee Against A Prospective Employer For Failure To Hire ......................................................................... 46

  III. The District Court Acted Well Within Its Broad Discretion In Not *Sua Sponte* Giving Plaintiff The Opportunity To Amend His Complaint .............................................................................. 52

  IV. This Court Should Not Certify To The New Jersey Supreme Court .......................................................................................... 57

CONCLUSION ...................................................................................... 60

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ......................................................... 23, 33

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004).............................................. 54, 55, 56

*Berrier v. Simplicity Mfg., Inc.*,
563 F.3d 38 (3d Cir. 2009).........................................................21

*Bonczek v. Carter Wallace, Inc.*,
701 A.2d 742 (N.J. App. Div. 1997)...............................................50

*Brewer v. Porch*,
249 A.2d 388 (N.J. 1969) ...........................................................26

*Callaghan v. Darlington Fabrics Corp.*,
No. PC-2014-5680, 2017 WL 2321181 (R.I. Super. May 23, 2017) ...................................................................................45

*Campione v. Adamar of N.J., Inc.*,
714 A.2d 299 (N.J. 1998)......................................................28, 31

*Carpenters Health v. Mgmt. Res. Sys. Inc.*,
837 F.3d 378 (3d Cir. 2016)....................................................20, 43

*Castro v. NYT Television*,
851 A.2d 88 (N.J. App. Div. 2004)................................................28

*Chance v. Kraft Heinz Foods Co.*,
No. CV K18C-01-056 NEP, 2018 WL 6655670 (Del. Super. Ct. Dec. 17, 2018) .....................................................................45

*Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*,
724 F.2d 369 (3d Cir. 1983)..........................................................22

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*,
364 F.3d 135 (3d Cir. 2004).........................................................47

*Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*,
573 F.2d 820 (3d Cir. 1978).........................................................57

*Cort v. Ash*,
422 U.S. 66 (1975) ............................................................. *passim*

*Cureton v. NCAA,*
  252 F.3d 267 (3d Cir. 2001) ........................................................... 56

*Delta Funding Corp. v. Harris,*
  426 F.3d 671 (3d Cir. 2005) (mem.) .............................................. 60

*Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B.,*
  24 A.3d 290 (N.J. 2011) ................................................................. 26

*Est. of Burns v. Care One at Stanwick, LLC,*
  258 A.3d 368 (N.J. App. Div. 2021)...................................... *passim*

*Evancho v. Fisher,*
  423 F.3d 347 (3d Cir. 2005) ........................................................... 21

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,*
  482 F.3d 247 (3d Cir. 2007) ..................................................... 53, 54

*Freeman Expositions, LLC v. Eighth Judicial Dist. Court,*
  520 P.3d 803 (Nev. 2022) .............................................................. 45

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002) ....................................................................... 33

*Grayson v. Mayview State Hosp.,*
  293 F.3d 103 (3d Cir. 2002)............................................... 54, 55, 56

*Hamilton Amusement Ctr. v. Verniero,*
  716 A.2d 1137 (N.J. 1998) ............................................................. 59

*Henson v. Daimler Truck N. Am. LLC,*
  No. 22-6479, 2013 WL 3072532 (Apr. 25, 2023) ............................ 5

*Hudnell v. Thomas Jefferson Univ. Hosps., Inc.,*
  537 F. Supp. 3d 852 (E.D. Pa. 2020) .............................................. 45

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997)......................................................... 21

*Jalowiecki v. Leuc,*
  440 A.2d 21 (N.J. App. Div. 1981)........................................ *passim*

*Jarrell v. Kaul,*
  123 A.3d 1022 (N.J. 2015) .................................................... *passim*

*Kemezis v. Matthews,*
  394 Fed. App'x 956 (3d Cir. 2010)......................................... 54, 55

*Krauss v. Greenbarg,*
    137 F.2d 569 (3d Cir. 1943) ........................................................... 22

*LabMD Inc. v. Boback,*
    47 F.4th 164 (3d Cir. 2022) ..................................................... 53, 54

*Laborers' Int'l Union v. Foster Wheeler Energy Corp.,*
    26 F.3d 375 (3d Cir. 1994) ..................................................... 55, 56

*Lake v. Arnold,*
    232 F.3d 360 (3d Cir. 2000) ................................................... 53, 54

*Lally v. Copygraphics,*
    428 A.2d 1317 (N.J. 1981) ........................................................... 34

*Lerner v. City of Jersey City,*
    No. A-1024-17T4, 2019 WL 1468735 (N.J. Super. Ct. App.
    Div. Apr. 2, 2019) (per curiam) .............................................. *passim*

*Matter of State Comm'n of Investigation,*
    527 A.2d 851 (1987) .................................................. 23, 27, 29, 35

*McCafferty v. Newsweek Media Grp., Ltd.,*
    955 F.3d 352 (3d Cir. 2020) .......................................................... 21

*Merlo v. Fed. Exp. Corp.,*
    No. CIV.A. 07-4311, 2010 WL 2326577 (D.N.J. June 7, 2010) ...... 40

*MHA, LLC v. Amerigroup Corp.,*
    539 F. Supp. 3d 349 (D.N.J. 2021) ............................................... 42

*Miller v. Zoby,*
    595 A.2d 1104 (N.J. App. Div. 1991) .................................... *passim*

*Nationwide Mut. Ins. Co. v. Buffetta,*
    230 F.3d 634 (3d Cir. 2000) .......................................................... 52

*Ne. Revenue Servs., LLC v. Maps Indeed, Inc.,*
    685 Fed. App'x 96 (3d Cir. 2017) ................................................. 54

*Noffsinger v. SSC Niantic Operating Co. LLC,*
    273 F. Supp. 3d 326 (D. Conn. 2017) ........................................... 45

*Palmiter v. Commonwealth Health Sys., Inc.,*
    260 A.3d 967 (Pa. Super. C. 2021) ............................................... 45

*Peper v. Princeton Univ. Bd. Of Trustees,*
　　376 A.2d 535 (N.J. App. Div. 1977)................................................34

*Pierce v. Ortho Pharmacy Corp.,*
　　417 A.2d 505 (N.J. 1980) ...................................................... *passim*

*Planned Parenthood of Cent. New Jersey v. Farmer,*
　　220 F.3d 127 (3d Cir. 2000) ..........................................................59

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,*
　　773 A.2d 1132 (N.J. 2001) .................................................... *passim*

*Ramsgate Ct. Townhome Ass'n v. W. Chester Borough,*
　　313 F.3d 157 (3d Cir. 2002) ..........................................................53

*Ranke v. Sanofi-Synthelabo Inc.,*
　　436 F.3d 197 (3d Cir. 2006) ..........................................................53

*Sabatino v. Saint Aloysius Par.,*
　　672 A.2d 217 (N.J. App. Div. 1996)....................................... *passim*

*Sipko v. Koger, Inc.,*
　　70 A.3d 512 (N.J. 2013) ................................................................50

*State Farm Mut. Auto. Ins. Co. v. Armstrong,*
　　949 F.2d 99 (3d Cir. 1991)............................................................22

*State Farm Mut. Auto. Ins. Co. v. Coviello,*
　　233 F.3d 710 (3d Cir. 2000)..............................................21, 48, 52

*State v. Gomes,*
　　288 A.3d 825 (N.J. 2023) ...............................................................5

*Touche Ross & Co. v. Redington,*
　　442 U.S. 560 (1979) ..........................................................23, 25, 40

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,*
　　444 U.S. 11 (1979) ........................................................................24

*United States v. Defreitas,*
　　29 F.4th 135 (3d Cir. 2022) ...............................................57, 58, 59

*Weichert Co. Realtors v. Ryan,*
　　608 A.2d 280 (N.J. 1992) .........................................................49, 50

*West v. Am. Tel. & Tel. Co.,*
　　311 U.S. 223 (1940) ..........................................................47, 48, 52

*Whitmire v. Wal-Mart Stores Inc.*,
  359 F. Supp. 3d 761 (D. Ariz. 2019) ..............................................45

*Winslow v. Corp. Express, Inc.*,
  834 A.2d 1037 (N.J. App. Div. 2003) ...............................................34

*Wisniewski v. Rodale, Inc.*,
  510 F.3d 294 (3d Cir. 2007) ................................................... *passim*

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ...............................................................23, 24

**Constitutional Provisions**

N.J. Const. art. IV, § 7...............................................................5, 7

**Statutes And Rules**

28 U.S.C. § 1332 ....................................................................10

28 U.S.C. § 1446 ....................................................................10

42 U.S.C. § 1983 ....................................................................54

Fed. R. App. P. 28 ...................................................................1

Fed. R. Civ. P. 15 ..................................................................53

Fed. R. Civ. P.12 ...................................................................10

L.A.R. 28.1 ...........................................................................2

L.A.R. Misc. 110.1 .................................................................57

N.J. Ct. R. 2:12A ...................................................................57

N.J. Stat. Ann. § 2C:35-10b ........................................................7

N.J. Stat. Ann. § 5:12-127 ........................................................22

N.J. Stat. Ann. § 10:5-12.11 ......................................................32

N.J. Stat. Ann. § 24:6I-31 ......................................................5, 41

N.J. Stat. Ann. § 24:6I-32 ......................................................6, 38

N.J. Stat. Ann. § 24:6I-34.................................................. *passim*

N.J. Stat. Ann. § 24:6I-35 ......................................................7, 30

N.J. Stat. Ann. § 24:6I-37 ..........................................................6

N.J. Stat. Ann. § 24:6I-39..........................................................6

N.J. Stat. Ann. § 24:6I-46................................................................6

N.J. Stat. Ann. § 24:6I-52.................................................8, 10, 33

N.J. Stat. Ann. § 24:6I-55........................................................9, 38

N.J. Stat. Ann. § 24-6I-43 ............................................................6

N.J. Stat. Ann. § 34:19-5.............................................................32

**Regulations**

N.J. Admin. Code § 17:30-3.1.....................................7, 8, 30, 31

N.J. Admin. Code § 17:30-3.3.......................................................31

N.J. Admin. Code § 17:30-6............................................................7

N.J. Admin. Code § 30-19...............................................................7

**Other Authorities**

*ASSEMBLY APPROPRIATIONS COMMITTEE STATEMENT*
    *TO [First Reprint] ASSEMBLY, No. 21 with committee*
    *amendments*, N.J. Legislature (Dec. 15, 2020)............................31

*CREAMM Act*, NJ.gov.................................................................6

## JURISDICTIONAL STATEMENT

The Jurisdictional Statement of Plaintiff-Appellant Erick Zanetich ("Zanetich") in the Appellant's Brief ("Br.") is complete and correct. *See* Fed. R. App. P.28(b)(1).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether New Jersey's "Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act" ("CREAMMA" or "Act") contains an implied private right of action for individuals.

2. Whether New Jersey common law provides a prospective employee with a cause of action against a prospective employer, based on the prospective employer's failure to hire the prospective employee.

3. Whether the district court abused its broad discretion by not *sua sponte* granting Plaintiff leave to amend his complaint.

4. Whether this Court should certify to the New Jersey Supreme Court the questions of whether CREAMMA implies a private right of action for individuals and/or whether New Jersey common law provides a prospective employee with a cause of action against a prospective employer based on a failure-to-hire theory.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. L.A.R. 28.1(a)(2), 28.2. Defendant-Appellees are not aware of any previous or pending appeals before this Court arising out of the same case or proceeding matters. L.A.R. 28.1(a)(2), 28.2.

## INTRODUCTION

In his complaint, Plaintiff Erick Zanetich asserted two claims against Defendants-Appellees Wal-Mart Stores East, Inc. and Sam's East, Inc. (collectively, "Walmart"), under New Jersey law. For his first claim, Zanetich asserts that Walmart violated the only employment-related provision of New Jersey's CREAMMA because, he alleges, Walmart rescinded its conditional offer of employment upon learning that Zanetich had tested positive for marijuana. For his second claim, and based on his alleged facts, Zanetich claimed that Walmart's rescission of its conditional job offer violated New Jersey public policy and thus was actionable under New Jersey common law. The district court below correctly held that both of Zanetich's claims fail as a matter of law, under longstanding and controlling principles of New Jersey law, and this Court should affirm that well-reasoned judgment.

First, CREAMMA contains no private right of action allowing plaintiffs to sue over alleged violations of its provisions. CREAMMA created a detailed regulatory regime for the production and sale of cannabis in the State, making this Act "read[ ] like a licensing statute aimed at distributors," as the district court correctly explained. Appendix ("App.") 12 n.1. CREAMMA provided that New Jersey's Cannabis Regulatory Commission ("Commission") would have sweeping powers to enforce all of its provisions, including by assisting in any prosecutions and imposing civil penalties for violations of regulations promulgated under the Act. Within this complex regulatory regime, enforced by the Commission, there is no indication that the Legislature intended, *sub silentio,* for plaintiffs like Zanetich to sue over CREAMMA violations. Thus, under the New Jersey Supreme Court's binding approach to deciding whether a statute implies a private cause of action, based on the factors in *Cort v. Ash,* 422 U.S. 66 (1975), Zanetich has no implied cause of action within CREAMMA to assert.

Second, New Jersey common law does not allow a prospective employee like Zanetich to bring a claim against a prospective employer for the failure to hire him. In its landmark decision in *Pierce v. Ortho*

*Pharmacy Corp.,* 417 A.2d 505 (N.J. 1980), the New Jersey Supreme Court recognized a common-law cause of action for at-will employees to sue their employers over a wrongful discharge, in violation of New Jersey public policy. *Pierce* makes clear that the common-law claim that it is recognizing extends *only* to actual employees, to the necessary exclusion of prospective employees. Multiple subsequent decisions from the New Jersey appellate courts have affirmed that conclusion, with no court in any jurisdiction (so far as Walmart is aware) reaching the opposite conclusion. Yet, despite this binding precedent, Zanetich has purported to bring a *Pierce* claim against Walmart for its failure to hire him. "[T]his is not an issue of [first impression," as the district court correctly noted, App.23, and Zanetich's second claim fails as a matter of law.

In all, given that Zanetich's two claims are entirely without merit, this Court should affirm the district court's dismissal of this lawsuit.

## STATEMENT OF THE CASE

### A.    Legal Background

In November 2020, the People of New Jersey amended their Constitution to provide that "[t]he growth, cultivation, processing, manufacturing, preparing, packaging, transferring, and retail

purchasing and consumption of cannabis, or products created from or which include cannabis, by persons 21 years of age and older . . . shall be lawful and subject to regulation by the Cannabis Regulatory Commission" of New Jersey ("Commission"). N.J. Const. art. IV, § 7, ¶ 13 (effective January 1, 2021); *State v. Gomes*, 288 A.3d 825, 835 (N.J. 2023). The People also vested the Cannabis Regulatory Commission with "regulatory authority concerning legalized cannabis . . . by law enacted by the [New Jersey] Legislature." N.J. Const. art. IV, § 7, ¶ 13(1).

In February 2021, the New Jersey Legislature implemented this new constitutional provision through the "Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act." N.J. Stat. Ann. § 24:6I-31 *et seq.*; *see Henson v. Daimler Truck N. Am. LLC*, No. 22-6479, 2013 WL 3072532, at *3 (Apr. 25, 2023) ("CREAMMA was enacted by the New Jersey State Legislature in order to implement the right to consume cannabis under the recently added Section VII of Article IV of the State Constitution."). Along with two other laws not directly relevant to this case, CREAMMA "creat[es] a regime of civil and criminal provisions to regulate the legalized recreational use of marijuana" in New Jersey. App.8–9 (citing § 24:6I-31 *et seq.*). The Legislature expressly

stated its purpose with CREAMMA in the text of the Act: "[T]o adopt a new approach" and regulate marijuana "in a similar fashion to the regulation of alcohol for adults," while "eliminat[ing] the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey." § 24:6I-32(a), (c); *see also id.* (b), (d)–(o) (identifying various problems with New Jersey's prior approach with marijuana); App.11–12.

CREAMMA creates a detailed regulatory regime for the production and sale of cannabis in the State, such that this Act "reads like a licensing statute aimed at distributors." App.12 n.1.[1] "[A]lmost all" of CREAMMA's "over twenty subsections address recreational cannabis licenses" alone. App.12 n.1. CREAMMA creates a detailed class structure for cannabis cultivators, manufacturers, wholesalers, distributors, retailers, and deliverers, §§ 24:6I-37, 24:6I-39–43; provides for "Marketplace Regulation" by limiting the holding of interests in multiple cannabis-related licenses in certain respects, § 24:6I-46; and

---

[1] The full text of CREAMMA, spanning 166 pages, is available at New Jersey's official government website. *See CREAMM Act*, NJ.gov, https://www.nj.gov/cannabis/documents/CREAMM%20Act.PDF (last visited Oct. 12, 2023).

makes lawful the "Operation of Cannabis Establishments, Distributors, and Delivery Services," § 2C:35-10b.

Consistent with the Cannabis Regulatory Commission's constitutional mandate, the Legislature broadly authorized the Commission to implement and enforce CREAMMA's statutory scheme. § 24:6I-34; N.J. Const. art. IV, § 7, ¶ 13(1). The Legislature provided that the Commission "shall have all powers necessary or proper to enable it to carry out the commission's duties, functions, and powers under [the Act]." § 24:6I-34(a); *see* N.J. Admin. Code § 17:30-3.1(a). The Commission may "adopt . . . regulations as necessary to carry out the intent and provisions of" the Act, N.J. Stat. Ann. § 24:6I-34(b)(4); *see also* § 24:6I-35(a), which regulations "shall include . . . [c]ivil penalties for the failure to comply with [them]," § 24:6I-35(a)(15); *see generally* N.J. Admin. Code § 17:30-6–:30-19. The Commission has the power to "investigate and aid in the prosecution of every violation of the statutory laws of [New Jersey] relating to cannabis and cannabis items and to cooperate in the prosecution of offenders before any State court of competent jurisdiction." N.J. Stat. Ann. § 24:6I-34(b)(3). And the Commission may "exercise all powers incidental, convenient, or

necessary" to enforce CREAMMA's provisions—including by issuing subpoenas, calling witnesses, administering oaths, taking depositions, and compelling both testimony and the production of evidence. N.J. Stat. Ann. § 24:6I-34(b)(5); *see* § 24:6I-34(b)(3); N.J. Admin. Code § 17:30-3.1(b).

CREAMMA includes a single employment-related subsection—Subsection 52, which is the provision at issue here. Subsection 52 provides that "[n]o employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee . . . because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items[.]" § 24:6I-52(a)(1). Subsection 52 does not "amend or repeal, or affect, restrict or preempt the rights and obligations of employers to maintain a drug- and alcohol-free workplace." N.J. Stat. Ann. § 24:6I-52(b)(1)(a). Further, Subsection 52 makes clear that "[a] drug test may also be done randomly by the employer, or as part of a pre-employment screening, or regular screening of current employees to determine use during an employee's prescribed work hours." § 24:6I-52(a)(1). CREAMMA's provisions "concerning the development, regulation, and enforcement of activities associated with personal use

cannabis, as well as acts involving personal use cannabis or cannabis items, shall not be construed . . . [t]o amend or affect in any way any State or federal law pertaining to employment matters." § 24:6I-55(a).

CREAMMA does not include an express private right of action, *see generally,* § 24:6I-34 *et seq.*, thus individuals do not have the express right to sue for a violation of CREAMMA, including Subsection 52.

## B.    Factual And Procedural Background

1. Taking the facts alleged in Zanetich's complaint as true solely for purposes of the motion-to-dismiss stage, Zanetich "applied for employment with [Walmart] to work in the Asset Protection Department" of Walmart's New Jersey facility around late January 2022, while also taking "the drug test" required to secure employment at Walmart "through a third-party, Inspira Urgent Care." App.31. A few days later, Zanetich interviewed with Walmart for this position, and Walmart "extended [him] an offer of employment" shortly thereafter, "subject to him submitting to and passing [the] drug test." *Id.* Around early February 2022, Inspira Urgent Care completed the drug test and "informed [Zanetich] that he tested positive for marijuana and that they are required to report the results to [Walmart's] HR department." *Id.*

Upon receiving these results, Walmart "emailed [Zanetich] and rescinded his job offer," *id.*, explaining in a subsequent phone conversation with Zanetich that this rescission was "because his drug test came back positive for marijuana," App.32. Zanetich further alleges that Walmart made this rescission pursuant to its "Drug & Alcohol Policy." App.30, 32.

Based on the preceding allegations, Zanetich filed his purported-class-action complaint in New Jersey state court on June 13, 2022, asserting two claims against Walmart. App.27, 32–34. First, Zanetich claimed that Walmart's recission of his conditional offer of employment constituted a "refus[al] to hire" based on his use of cannabis, in violation of Subsection 52 of CREAMMA. App.27, 32–34 (citation omitted); § 24:6I-52. Second, Zanetich brought a so-called "*Pierce* claim" against Walmart for "Failure to Hire/Wrongful Discharge" in violation of public policy, purportedly under the New Jersey Supreme Court's landmark decision in *Pierce v. Ortho Pharmacy Corp.,* 417 A.2d 505 (N.J. 1980). App.33.

2. Walmart timely removed the case to the U.S. District Court for the District of New Jersey on September 2, 2022, App.2; *see* 28 U.S.C. §§ 1332(a), 1446, and then moved to dismiss the complaint for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that both of Zanetich's claims failed as a matter of law, *see* R.10.  As to Zanetich's first claim, Walmart argued that CREAMMA does not provide a private plaintiff with an implied cause of action entitling him to sue for violations of its provisions, under the three-factor, implied-cause-of-action test that the New Jersey Supreme Court has adopted from *Cort v. Ash,* 422 U.S. 66 (1975).  *Id.* 2–7; *see R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 773 A.2d 1132, 1143 (N.J. 2001).  As to Zanetich's second claim, Walmart argued that New Jersey courts have rejected attempts to extend *Pierce* into the failure-to-hire context.  R.10 at 7–10.  Zanetich opposed Walmart's motion as to both of his claims.  R.13.

3. The district court granted Walmart's motion in full and dismissed Zanetich's complaint, applying New Jersey law as a federal court sitting in diversity. App.4–5, 8, 21.

On the first count, the district court held that CREAMMA does not create an implied cause of action, after applying the three-factor *Cort* test.  App.8–19.  Under the first *Cort* factor, the district court expressed doubt as to Zanetich's membership within the special class of persons that the Legislature enacted CREAMMA to protect, suggesting that the

applicable class may be cannabis "distributors." App.12 n.1.  Yet, the district court ultimately "constru[ed] the statute liberally" to conclude that Zanetich was "within the class," defined as "includ[ing] individuals who recreationally use marijuana."  App.12.  Nevertheless, under the second *Cort* factor, the court held that the Legislature intended for the Commission "to handle all aspects of the enforcement of the statute," meaning that the Legislature just as clearly did not intend to grant individuals a private right of action to sue for CREAMMA violations. App.12–21.  Then, the district court concluded that the third factor weighed against finding an implied right of private action, relying on the same reasoning that it articulated under the second factor to conclude that an implied cause of action would be inconsistent with the underlying purpose of the statutory scheme.  App.21–22.  Then, weighing the three factors, the district court "conclude[d] there is no private cause of action under CREAMMA."  App.22.

As for the second count, the district court held that New Jersey does not recognize a *Pierce* claim for a failure to hire, as "New Jersey appeals courts have time and time again found."  App.23 (citing *Lerner v. City of Jersey City*, No. A-1024-17T4, 2019 WL 1468735, at *4 (N.J. Super. Ct.

App. Div. Apr. 2, 2019) (per curiam), and *Sabatino v. Saint Aloysius Par.*, 672 A.2d 217, 221 (N.J. App. Div. 1996)). And because Zanetich "was never employed by [Walmart]," and Walmart "did not terminate him [but rather] rescinded his conditional job offer," the district court found that he "fail[ed] to state a claim for wrongful discharge." App.22–23.

4. Zanetich appealed the district court's grant of Walmart's motion to dismiss to this Court. Dkt.12.

## SUMMARY OF ARGUMENT

I. This Court should affirm the district court's dismissal of Zanetich's complaint for failure to state a claim as to his first count because New Jersey's CREAMMA does not confer an implied cause of action, under the *Cort* factors.

To determine whether a New Jersey statute without an express cause of action contains an implied cause of action, New Jersey courts apply a three-factor test from the U.S. Supreme Court's *Cort* decision, considering whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative

scheme to infer the existence of a private right of action. The *Cort* factors weigh against a finding of an implied cause of action in CREAMMA here.

A. Beginning with the most-important second *Cort* factor, this factor considers the text, structure, and context of the statute at issue to discern the Legislature's intent to imply a private cause of action.

Here, these considerations provide no evidence that the Legislature intended to create a private right of action under CREAMMA, thus the second *Cort* factor weighs powerfully against such a finding in this case. The Act's text gives no indication that the Legislature intended to allow an individual to pursue a private cause of action for a violation of CREAMMA. As for the Act's structure, it sets forth a comprehensive method of enforcement by the Commission—not by private litigants—empowering the Commission with all powers necessary to enforce CREAMMA, including the power to pass regulations under CREAMMA, to investigate alleged violations, to aid in the prosecution of violations, and to impose civil penalties for violations of CREAMMA regulations. The Act's context is in accord, as the Legislature created an express right of private action in other employment statutes—but not in CREAMMA—demonstrating that its omission in CREAMMA was intentional.

Zanetich's contrary arguments on this factor are all misplaced. The relevant portion of Subsection 52 in CREAMMA does not use "rights creating language." Further, the district court properly relied on the absence of an express cause of action in weighing this factor, as this is a consideration unequivocally used by New Jersey courts. Finally, the district court's reliance on other employment statutes in New Jersey that contain express causes of action for private individuals was proper.

B. Moving to the third *Cort* factor, this is similar to the second factor and asks whether finding an implied cause of action would be inconsistent with the underlying purposes of the legislative scheme, including whether this would frustrate or be superfluous to the achievement of the legislation's purpose.

Here, an implied cause of action for private plaintiffs under CREAMMA is not consistent with the underlying purposes" of the Act, thus this factor weighs against finding an implied cause of action in CREAMMA as well.

To begin, this third *Cort* factor weighs against finding an implied cause of action in CREAMMA for the same reasons supporting the second *Cort* factor, given that these factors are similar.

Further, an implied cause of action also is not consistent with CREAMMA's purposes. CREAMMA adopts a new approach and regulates marijuana in a similar fashion to the regulation of alcohol for adults, while eliminating the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey. An implied backward-looking private cause of action in CREAMMA, against prospective employers who themselves have no role in the cannabis market, would not be consistent with CREAMMA's proactive purpose to establish a robust, regulated, recreational marijuana industry.

Zanetich's arguments on the third *Cort* factor mirror his arguments on the similar second *Cort* factor, and so these fail for the same reasons.

C. Finally, the first *Cort* factor—whether the plaintiff is a member of the class for whose special benefit the statute was enacted—also weighs against a finding of an implied cause of action in CREAMMA, although this is admittedly a closer question than the other two factors. CREAMMA's text and structure demonstrate that the class that the Legislature enacted CREAMMA to benefit is "any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis

or cannabis items within [New Jersey]," N.J. Stat. Ann. § 24:6I-34—not prospective employees who may use marijuana. As Zanetich is not a member of that class, this factor too weighs against him here. And while Zanetich argues to the contrary on this factor, his interpretation of CREAMMA and the class that it especially benefits is incorrect.

D. Zanetich makes three additional arguments not tied to any particular *Cort* factor, but these are meritless as well. First, he claims the district court applied the wrong legal test, but this is irrelevant in light of the *de novo* standard of review and, in any event, is an overreading of the district court's opinion. Second, Zanetich argues that finding an implied cause of action in CREAMMA is necessary to prevent the Act from becoming meaningless, but Legislature's grant of robust regulatory and enforcement authority to the Commission fully rebuts this argument. Finally, Zanetich argues that other States have found implied causes of action in their own cannabis legalization laws, but this is legally irrelevant, given the material differences in these other state laws and/or these States' approaches to implied causes of action.

II. This Court should also affirm the district court's dismissal of Zanetich's complaint for failure to state a claim as to his second count,

because New Jersey does not recognize a common-law claim from a prospective employee against a prospective employer for failure to hire in violation of public policy.

In the New Jersey Supreme Court's landmark decision of *Pierce*, 417 A.2d 505, the Court recognized a common-law claim of an employee against his employer for wrongful discharge in violation of public policy. *Pierce* does not recognize the claim of a *prospective* employee against his *prospective* employer for failure to hire, as the *Pierce* opinion itself and multiple decisions from New Jersey's appellate courts make clear.

Here, Zanetich's second count purports to state a common-law claim under *Pierce* for Walmart's failure to hire Zanetich after first extending him a conditional job offer, in violation of New Jersey public policy. As *Pierce* does not extend to prospective employees, Zanetich has failed to state a claim as a matter of law.

Zanetich's counterarguments are all unpersuasive. Zanetich claims that the New Jersey Supreme Court has not addressed this issue, but the *Pierce* opinion itself makes clear that the common-law claim it announced for the first time extended *only* to an employee against his employer for wrongful discharge from employment. Zanetich then argues that he has

asserted "a classic *Pierce* claim" because there was an employment contract between Walmart and himself, but that is completely false and lacks any support in the allegations of Zanetich's complaint. Finally, Zanetich criticizes the uniform state-court case law rejecting his arguments on *Pierce*, but he does not cite any authority that would justify this Court departing from that case law.

III. The district court was well within its broad discretion not to *sua sponte* grant Zanetich leave to amend his complaint. This Court has held that a district court ordinarily need not worry about granting leave to amend when a plaintiff does not properly request it, so Zanetich's failure to request leave to amend here means that the district court properly declined to *sua sponte* grant such leave. Zanetich argues that this Court should instead apply its special leave-to-amend rule for civil-rights cases (which rule does require a district court to grant leave to amend *sua sponte*, unless amendment would be inequitable or futile), but that is wrong. As an initial matter, Zanetich fails to develop any argument that this is a civil-rights case. Regardless, granting leave to amend would be inequitable and futile, because Zanetich has not shown that any

amendment would survive a motion to dismiss, and any amendment would fundamentally and belatedly alter this proceeding.

IV. Finally, this Court should reject Zanetich's request to certify two questions to the New Jersey Supreme Court—namely, whether CREAMMA implies a private right of action and whether New Jersey common law creates a cause of action for prospective employees on a failure-to-hire theory. Neither of these questions is unclear under New Jersey law; New Jersey has minimal interest in adjudicating these straightforward issues itself; and certification would not further judicial economy, given the needless additional burdens it would impose on the New Jersey Supreme Court, this Court, and all the parties.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), applying the same standard as the district court. *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 382 (3d Cir. 2016).  Under Rule 12(b)(6), the district court must dismiss a complaint if, after taking the complaint's well-pleaded factual allegations as true and construing those facts in the light most favorable to the plaintiff, the complaint fails to

state a claim as a matter of law. *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005). While the district court must accept well-pleaded factual allegations as true at the motion-to-dismiss stage, the court "need not credit a complaint's bald assertions or legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (citation omitted).

Where, as here, the federal courts are exercising their diversity jurisdiction, the courts must apply the substantive law of the forum State—in this case, New Jersey. *McCafferty v. Newsweek Media Grp., Ltd.,* 955 F.3d 352 (3d Cir. 2020). When interpreting the forum State's law, the decisions of the State's Supreme Court "are, of course, the authoritative source." *State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir. 2000). But "[i]n the absence of a controlling decision by the [New Jersey] Supreme Court, a federal court applying that state's substantive law must predict" how the State's high court would decide a relevant dispute between the parties. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45–46 (3d Cir. 2009). A federal court must simply "apply state law . . . irrespective of what [the federal court] may regard as its merits." *Krauss v. Greenbarg,* 137 F.2d 569, 571 (3d

Cir. 1943).  Finally, this Court also reviews *de novo* the district court's

interpretation of state law, including any prediction from the district

court of how a State's highest court would decide an issue of first

impression. *Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.*, 724

F.2d 369, 371–72 (3d Cir. 1983); *State Farm Mut. Auto. Ins. Co. v.

Armstrong*, 949 F.2d 99, 101 (3d Cir. 1991).

## ARGUMENT

### I.   New Jersey's CREAMMA Does Not Confer An Implied Cause Of Action, Under The *Cort* Factors

An injured plaintiff cannot sue in court over a violation of a New

Jersey statute unless the New Jersey Legislature has created an

individual cause of action authorizing the plaintiff to bring that claim.

*See R.J. Gaydos,* 773 A.2d at 1142.  The Legislature may create a cause

of action for private plaintiffs in two ways, either expressly or impliedly.

*Id.* at 1142–43.  The Legislature creates an express cause of action for

private individuals to sue by including specific language in the statute to

that effect, such as "[a]ny person injured . . . by reason of a [statutory]

violation . . . may sue therefore in an appropriate court." *Miller v. Zoby*,

595 A.2d 1104, 1107, 1108 (N.J. App. Div. 1991) (quoting N.J. Stat. Ann.

§ 5:12-127); *see* App.17–18 (providing two other examples).  Where the

Legislature has not included an express cause of action, New Jersey courts may, at times, conclude that the Legislature has impliedly created a private cause of action. *R.J. Gaydos*, 773 A.2d at 1142; *Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015); *Matter of State Comm'n of Investigation*, 527 A.2d 851, 854 (1987); *accord Cort*, 422 U.S. at 78. The path to finding an implied cause of action in New Jersey is narrow, reflecting the New Jersey courts' "reluctan[ce] to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos*, 773 A.2d at 1142; *accord Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("[T]he judicial task [i]s instead 'limited solely to determining whether Congress intended to create the private right of action asserted.'") (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)).

To determine whether the New Jersey Legislature has impliedly created a private cause action, the New Jersey Supreme Court applies a three-factor test, based on the test articulated by the U.S. Supreme Court in *Cort*. *See R.J. Gaydos*, 773 A.2d at 1143 (citing *Cort*, 422 U.S. at 78). Thus, New Jersey courts consider whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is

any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* (citing *Cort*, 422 U.S. at 78).

"Although courts give varying weight to each one of those factors, the primary goal has almost invariably been a search for the underlying legislative intent." *Id.* (citing *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. App. Div. 1981)) (citation omitted); *accord Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979) ("The dispositive question remains whether [the Legislature] intended to create any such remedy."). Or, as this Court has explained, legislative intent is the "sole touchstone" of the implied-cause-of-action analysis. *Wisniewski v. Rodale, Inc.,* 510 F.3d 294, 303 (3d Cir. 2007). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Ziglar*, 582 U.S. at 133 (citations omitted; brackets omitted). So, given the primacy of legislative intent in the *Cort* test, Walmart respectfully submits that the second factor—whether "there is any evidence that the

Legislature intended to create a private right of action under the statute,"
*R.J. Gaydos*, 773 A.2d at 1143—holds pride of place, *see Jarrell*, 123 A.3d
at 1029 ("strong indicia" of legislative intent needed to imply cause of
action in statute (citation omitted)).

The three *Cort* factors weigh against a finding that the Legislature
implied a cause of action in CREAMMA for individuals to sue for
violations of that Act, *infra* Part I.A–C, notwithstanding Zanetich's
various contrary arguments.  Thus, the district court properly dismissed
the first count of Zanetich's complaint for failure to state a claim.

> **A.    There Is No Evidence That The Legislature Intended
> To Create A Private Right Of Action Under CREAMMA**

1. Beginning with the most-important second *Cort* factor—whether
"there is any evidence that the Legislature intended to create a private
right of action under the statute," *R.J. Gaydos*, 773 A.2d at 1143—courts
consider the presence or absence of this factor to be "a matter of statutory
interpretation," requiring use of the traditional tools of statutory
construction, *Est. of Burns v. Care One at Stanwick, LLC*, 258 A.3d 368,
375 (N.J. App. Div. 2021); *accord Touche Ross*, 442 U.S. at 568 ("The
question of the existence of a statutory cause of action is, of course, one
of statutory construction.").  Thus, courts must consider the "text,"

"structure," and "context" of the statute at issue, *see Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B.*, 24 A.3d 290, 294 (N.J. 2011), to determine whether, per the second *Cort* factor, "there is any evidence that the Legislature intended to create a private right of action under the statute," *R.J. Gaydos*, 773 A.2d at 1143.

As for the consideration of the statutory text, New Jersey courts have explained that the absence of language suggesting the creation of a private cause of action in the statute is itself "reliable evidence that the Legislature neither intended to create such a cause of action . . . nor desired the judiciary to create one by implication," under the second *Cort* factor. *Miller*, 595 A.2d at 1108. That is because courts "assume the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes' . . . [and therefore] knows how to authorize private causes of action when it desires to do so." *Burns*, 258 A.3d at 376 (quoting *Brewer v. Porch*, 249 A.2d 388, 391 (N.J. 1969)). Accordingly, New Jersey courts generally conclude that, "[l]ike the dog that didn't bark in the night . . . by not expressly declaring a private cause of action [in the statute at issue], the Legislature consciously chose not to create one." *Id.*

As for the statutory structure, two structural features of statutes are especially helpful for determining whether the Legislature has implied a cause of action. The first is the presence of a government-enforcement mechanism for violations of the statute, *see R.J. Gaydos*, 773 A.2d at 1143–44, 1148–49; *Matter of State Comm'n of Investigation*, 527 A.2d at 856–57; *Miller*, 595 A.2d at 1108, because "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it," *Jalowiecki*, 440 A.2d at 26 (quoting *TAMA*, 444 U.S. at 19). So, for example, New Jersey courts have concluded that a statute does not imply a cause of action for private plaintiffs where the statute provided for "regulatory sanctions," *Miller*, 595 A.2d at 1108; created a "mechanism[ ] for the Attorney General to enforce that statute," *R.J. Gaydos*, 773 A.2d at 1143 (citing *Matter of State Comm'n of Investigation*, 527 A.2d at 856); or included "civil penalty provisions," *Id.* at 1144; *accord Wisniewski*, 510 F.3d at 305 ("[A]gency enforcement creates a strong presumption against implied private rights of action that must be overcome."). The second relevant structural feature that makes New Jersey courts "especially hesitant in implying a right to a private cause of action," *Castro v. NYT Television,* 851 A.2d 88,

94–95 (N.J. App. Div. 2004), is whether the statute provides "comprehensive regulation," *R.J. Gaydos*, 773 A.2d at 1148–49, since finding an implied cause of action could disrupt the Legislature's "elaborate regulatory scheme," *see Campione v. Adamar of N.J., Inc.,* 714 A.2d 299, 309 (N.J. 1998).

Finally, for the statutory-context consideration, New Jersey courts interpret the statute at issue "sensibly in light of [its] surroundings and other similar or even unrelated legislation" to determine whether the Legislature intended to imply a cause of action in that statute. *Burns*, 258 A.3d at 375. For example, when statutes related to the statute at issue create an express cause of action, this weighs against a conclusion that the Legislature intended to imply a cause of action in the statute at issue. *See Miller*, 595 A.2d at 1108.

2. Here, the text, structure, and statutory context of CREAMMA provide no "evidence that the Legislature intended to create a private right of action under the statute." *R.J. Gaydos*, 773 A.2d at 1143.

CREAMMA's text does not suggest the creation of an individual cause of action, *see generally* § 24:6I-34 *et seq.*, which is "reliable evidence that the Legislature neither intended to create such a cause of action . . .

nor desired the judiciary to create one by implication," under the second *Cort* factor. *Miller*, 595 A.2d at 1108; *Burns*, 258 A.3d at 376. As the district court correctly concluded below, the text of the Act gives "simply no indication that the Legislature intended to allow an individual to pursue a private cause of action for a violation of CREAMMA." App.20. So, "[l]ike the dog that didn't bark in the night," the Legislature's choice not to create expressly a cause of action in CREAMMA for private plaintiffs like Zanetich supports the conclusion that "the Legislature consciously chose not to create one." *Burns*, 258 A.3d at 376.

Second, CREAMMA's structure likewise demonstrates that the Legislature did not intend to create a cause of action in CREAMMA by implication. *E.g.*, *see R.J. Gaydos*, 773 A.2d at 1143–44, 1148–49.

CREAMMA empowers the Commission to enforce CREAMMA's provisions—not private litigants through individual causes of action—and thus the "court must be chary of reading" an implied cause of action "into it." *Jalowiecki*, 440 A.2d at 26 (citation omitted); *see also R.J. Gaydos*, 773 A.2d at 1143–44, 1148–49; *Matter of State Comm'n of Investigation*, 527 A.2d at 856–57; *Miller*, 595 A.2d at 1108. "[T]he Legislature intended for the [Commission] to *handle all aspects of the*

*enforcement of [CREAMMA]*," as the district court correctly held. App.14 (emphasis added). To this end, the Legislature empowered the Commission to "investigate and aid in the prosecution of every violation of the statutory laws of [New Jersey] relating to cannabis and cannabis items and to cooperate in the prosecution of offenders before any State court of competent jurisdiction." N.J. Stat. Ann. § 24:6I-34(b)(3); App.14–15. The Commission's CREAMMA enforcement powers are exceedingly robust, comprising "*all* powers incidental, convenient, or necessary"— including the power to issue subpoenas, call witnesses, administer oaths, take depositions, and compel both testimony and the production of evidence. § 24:6I-34(b)(5) (emphasis added); *see* § 24:6I-34(b)(3); N.J. Admin. Code § 17:30-3.1(b); App.15. Further, the Commission: "shall have *all* powers necessary or proper to enable it to carry out the commission's duties, functions, and powers under [the Act]," N.J. Stat. Ann. § 24:6I-34(a) (emphasis added); *see* N.J. Admin. Code § 17:30-3.1(a); may "adopt . . . regulations as necessary to carry out the intent and provisions of" the Act, N.J. Stat. Ann. § 24:6I-34(b)(4); and "shall adopt rules and regulations . . . which shall be consistent with the intent of [CREAMMA]," § 24:6I-35(a). Finally, CREAMMA's enforcement

provisions also include "civil penalty provisions," *R.J. Gaydos*, 773 A.2d at 1144, as the Act mandates that the Commission's regulations "shall include . . . [c]ivil penalties for the failure to comply with regulations adopted pursuant to [CREAMMA]." § 24:6I-35(a)(15); *see R.J. Gaydos*, 773 A.2d at 1144; *Miller*, 595 A.2d at 1108 ("regulatory sanctions"); *see also* App.15–16 (citing Appropriations Committee Report Statement to Assembly Bill No. 21 (Dec. 15, 2020));[2] N.J. Stat. Ann. § 24:6I-34; N.J. Admin. Code § 17:30-3.3(a)(3)–(4); and N.J. Admin. Code § 17:30-3.1 for further support of the Commission's enforcement authority under CREAMMA).

CREAMMA's detailed regulations are "comprehensive," *R.J. Gaydos*, 773 A.2d at 1148, and the Commission's robust enforcement and regulation-promulgation powers create an "elaborate regulatory scheme," *Campione,* 714 A.2d at 309, providing additional statutory-structural evidence that the Legislature did not intend to create an implied cause of action in this Act that would disrupt the Legislature's chosen regulatory regime.

---

[2] *See ASSEMBLY APPROPRIATIONS COMMITTEE STATEMENT TO [First Reprint] ASSEMBLY, No. 21 with committee amendments*, N.J. Legislature (Dec. 15, 2020), https://pub.njleg.gov/bills/2020/A0500/21_S3.HTM.

Finally, CREAMMA's statutory context provides additional support for the conclusion that, under the second *Cort* factor, the Legislature did not intend to create an implied cause of action in CREAMMA. *Burns*, 258 A.3d at 375; *Miller*, 595 A.2d at 1108. As the district court observed, "other employment statutes adopted by the New Jersey Legislature . . . explicitly provide for a private cause of action," including the "Conscientious Employee Protection [Act]" and "the New Jersey Law Against Discrimination." App.17–18 (citing N.J. Stat. Ann. § 34:19-5, and § 10:5-12.11). Yet, with CREAMMA, the Legislature chose not to include such express-cause-of-action language, although the Act also touches upon employment regulations. App.17–18. This juxtaposition between "similar . . . legislation," *Burns*, 258 A.3d at 375, again demonstrates that the Legislature did not wish for private individuals to sue over violations of CREAMMA. *See Miller*, 595 A.2d at 1108.

3. Zanetich makes multiple arguments that the second *Cort* factor weighs in his favor, but all of these are misplaced. Br.22–35.

Zanetich argues that CREAMMA uses "rights-creating language," Br.29–30; *see also id.* at 23–25, which some courts have recognized as a piece of evidence that may show the Legislature's intent to create by

implication an individual cause of action in a statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). But the relevant portion of Subsection 52 here—"[n]o employer shall refuse to hire or employ any person . . . because that person does or does not . . . use cannabis items," § 24:6I-52(a)(1)—does not contain such language, given that it "focus[es] on the person regulated" (the employer) "rather than the individuals protected" (the prospective employee), meaning there is "no implication of an intent to confer rights on a particular class of persons." *Alexander,* 532 U.S. at 289 (citation omitted); *accord Wisniewski*, 510 F.3d at 302.

Zanetich also criticizes the district court's reliance on the absence of an express cause of action as a relevant consideration under the second *Cort* factor, Br.22–23 (making same argument as to third *Cort* factor), but the New Jersey courts unequivocally consider this when determining whether "there is any evidence that the Legislature intended to create a private right of action under the statute." *R.J. Gaydos*, 773 A.2d at 1143; *see Miller*, 595 A.2d at 1108; *Burns*, 258 A.3d at 376.

Finally, Zanetich critiques the district court's citation of other employment statutes in New Jersey that contain express causes of action for private individuals. *Compare* App.17–18, *with* Br.26–29. However,

these criticisms show that even Zanetich understands that the juxtaposition between those statutes and CREAMMA is probative of the Legislature's intent, at least to some degree. *See* Br.26. And while New Jersey courts may have found implied causes of action in other employment statutes that, like CREAMMA, lack an express cause of action, that holds little weight here. Br.26–27 (citing *Peper v. Princeton Univ. Bd. Of Trustees,* 376 A.2d 535, 539 (N.J. App. Div. 1977), *rev'd on other grounds,* 389 A.2d 465 (N.J. 1978); *Winslow v. Corp. Express, Inc.*, 834 A.2d 1037, 1042 (N.J. App. Div. 2003), and *Lally v. Copygraphics*, 428 A.2d 1317 (N.J. 1981)). Zanetich does not even attempt to claim in the Appellant's Brief that the other statutes at issue in *Peper*, *Winslow*, and *Lally* include robust enforcement mechanisms comparable to the Commission's powers under CREAMMA here, *see generally* Br.26–29, and each of those cases are otherwise distinguishable in any event, *see Peper*, 376 A.2d at 539 (not applying the *Cort* factors); *Winslow*, 834 A.2d at 1042 (same, and considering statute that already had an express cause of action); *Lally*, 428 A.2d at 1318–19 (seemingly applying a presumption in favor of implied causes of action).

### B.     Inferring A Private Right Of Action Under CREAMMA Would Be Inconsistent With The Underlying Purposes Of The Legislative Scheme

1. The third *Cort* factor asks whether "it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *R.J. Gaydos*, 773 A.2d at 1143.  In weighing this factor, New Jersey courts consider whether an implied private right of action would "frustrate," *see Matter of State Comm'n of Investigation*, 527 A.2d at 855, or "be superfluous to the achievement of the legislation's purpose," *Jalowiecki,* 440 A.2d at 27.  This factor is "similar" to the second *Cort* factor, *id.*, discussed above, *supra* Part I.B, as the district court also reasoned, App.21; *see Wisniewski,* 510 F.3d at 303 (legislative intent is the "sole touchstone" of the analysis).

The New Jersey Supreme Court's decision in *Jarrell* is instructive as to the third *Cort* factor.  123 A.3d 1022.  There, the statute at issue required doctors licensed and practicing in New Jersey to carry medical-malpractice liability insurance, *id.* at 1023–24, 1028–29, and "[t]he underlying purpose of the legislation" was "predominantly proactive"— "to create a source of compensation for a patient injured by negligent medical care," *id.* at 1031.  Medical-malpractice plaintiffs injured by an

uninsured doctor attempted to sue the doctor under the statute for his failure to carry the required insurance, asserting that the statute afforded them an implied cause of action. *Id.* at 1029. The New Jersey Supreme Court rejected the plaintiffs' arguments, concluding that an implied cause of action "does little to further the articulated goal" of the statute—to proactively create a source of funds for patients before they are injured—since "[a] post-injury direct claim against a noncompliant and negligent physician is reactive" only. *Id.* at 1031.

The New Jersey Appellate Division's decision in *Jalowiecki*, 440 A.2d 21, is likewise instructive. There, the court considered whether a "statutory and regulatory scheme" governing the construction and placement of "sewage disposal" systems—which scheme included "enforcement procedures . . . available to the public officials charged with enforcing"—implied a private cause of action for the current owners of a property to sue the prior owners for violating the regulation. *Id.* at 22–24, 26. The court explained that the purpose of this statutory and regulatory scheme was "to preserve the public health, the potable water supply, and the environment in general for the community as a whole." *Id.* at 26. Then, the court concluded that—under the third *Cort* factor—

an implied cause of action for private plaintiffs was inconsistent with this purpose, as it "could not possibly be as effective in promoting environmental protection as the summary proceedings available to" the public officials charged with enforcing the scheme. *Id.* at 27. So, while a "private action" was "consistent with the spirit of the act," it was nevertheless "superfluous to the achievement of the legislation's purpose," meaning that the third *Cort* factor weighed against the finding of an implied cause of action there. *Id.*

2. Here, an implied cause of action for private plaintiffs under CREAMMA is not "consistent with the underlying purposes" of the Act; thus, this Court should not "infer the existence of such a remedy" under the third *Cort* factor. *R.J. Gaydos*, 773 A.2d at 1143.

As an initial matter, the third *Cort* factor weighs against the finding of an implied a cause of action in CREAMMA for "similar" reasons as the second *Cort* factor, discussed above. *Jalowiecki,* 440 A.2d at 27; App.21; *see Wisniewski,* 510 F.3d at 303; *supra* Part I.B. That is, finding an implied cause of action in CREAMMA for private plaintiffs cannot possibly be "consistent" with the Act's "purposes," *R.J. Gaydos*, 773 A.2d at 1143, because CREAMMA's text, statutory structure, and statutory

context all powerfully weigh against such a finding, *supra* Part I.A.  That is why the district court was correct to weigh the third *Cort* factor against a finding of an implied cause of action "[f]or similar reasons . . . related to the second *Cort* factor," including because CREAMMA's "legislative scheme . . . delegate[es] [ ] authority to the [Commission] to create regulations and enforce violations."  App.21–22.

That said, an implied cause of action also is not "consistent" with CREAMMA's "underlying purposes," *R.J. Gaydos*, 773 A.2d at 1143, under the reasoning of *Jarrell* and *Jalowiecki*.  CREAMMA's "underlying purposes," *id.*, are "to adopt a new approach" and regulate marijuana "in a similar fashion to the regulation of alcohol for adults," while "eliminat[ing] the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey."  § 24:6I-32(a), (c); *see also id.* (b), (d)–(o) (identifying various problems with New Jersey's prior approach with marijuana); App.11–12.  By CREAMMA's express terms, these purposes do not include "amend[ing] or affect[ing] in any way any State or federal law pertaining to employment matters." § 24:6I-55(a).  Similar to the statute at issue in *Jarrell*, CREAMMA's purposes are "predominantly proactive," *Jarrell*, 123 A.3d at 1031,

designed to create a functioning, regulated industry for "the legalized recreational use of marijuana," App.8–9.  That proactive purpose, to establish a robust, regulated, recreational marijuana industry, is not consistent with "reactive," backward-looking private causes of action against prospective employers who have no role in the cannabis market. *See Jarrell*, 123 A.3d at 1031.  Like in *Jalowiecki*, allowing individuals to assert an implied cause of action under CREAMMA also would be inconsistent with the Act's purposes because it "could not possibly be as effective" at regulating New Jersey's marijuana industry as the Commission's exercise of the comprehensive regulatory and enforcement authority that it enjoys under CREAMMA itself.  440 A.2d at 27.

3. Zanetich's arguments with respect to the third *Cort* factor simply incorporate his arguments with respect to the second *Cort* factor.  *See, e.g.*, Br.22.  Accordingly, Zanetich's claim that the third *Cort* factor weighs in favor of a finding of an implied cause of action in CREAMMA fails for the same reasons already discussed above.  *Supra* Part I.A.3.

**C.  Plaintiff Is Not A Member Of The Class That The Legislature Enacted CREAMMA To Especially Benefit**

1. The first *Cort* factor considers whether the "plaintiff is a member of the class for whose special benefit the statute was enacted."  *R.J.*

*Gaydos*, 773 A.2d at 1143.  As with the second *Cort* factor (and the "similar" third *Cort* factor), whether the first *Cort* factor weighs in favor of or against a finding of an implied cause of action in the statute at issue ultimately is a question of statutory interpretation.  *See Jalowiecki*, 440 A.2d at 26; *Merlo v. Fed. Exp. Corp.*, No. CIV.A. 07-4311, 2010 WL 2326577, at *9 (D.N.J. June 7, 2010) ("[O]ne need only consult the [Wage and Hour Law]'s express statement of legislative purpose to see that . . . employees are the obvious special beneficiaries of the statute[.]"); *accord Touche Ross & Co.*, 442 U.S. at 576 ("[T]he statute by its terms grants no private rights to any identifiable class[.]").

2. Here, while it is admittedly a closer question than the other two *Cort* factors discussed above, the better conclusion is that Zanetich is not a "member of the class for whose special benefit the statute was enacted." *R.J. Gaydos*, 773 A.2d at 1143.  Consistent with the district court's observations below, the class that the Legislature enacted CREAMMA to especially benefit is "any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within [New Jersey]," N.J. Stat. Ann. § 24:6I-34, not prospective employees who may use marijuana, App.12 n.1.  That conclusion flows

- 40 -

from CREAMMA's text and structure. CREAMMA's over 20 subsections—spanning 166 pages—"read[ ] like a licensing statute aimed at distributors," given the exceedingly detailed regulatory regime that the Act created for the production and sale of cannabis in the State. *Id.*; *see generally* § 24:6I-31, *et seq.* CREAMMA includes only a single employment-related provision, Subsection 52, App.12 n.1—thus the "class" of prospective employees potentially affected by Subsection 52 could not possibly be the Legislature's "special" focus in CREAMMA. *R.J. Gaydos*, 773 A.2d at 1143. And while the district court ultimately reached the contrary conclusion, that turned on its decision to "constru[e] the statute liberally," without citing any New Jersey authority supporting the adoption of such a liberal construction. App.12 & n.1.

3. Zanetich claims that he is a member of the "class" for whose "special benefit" CREAMMA "was enacted," but his interpretation of the Act is incorrect. Br.18–22. Zanetich argues that "CREAMMA was enacted to benefit adult users of cannabis in several ways," including as to Subsection 52's employment provision. Br.19–21. But the first *Cort* factor does not simply ask whether *any* class benefits from a statute in some way, such that any class may credibly claim to possess an implied

cause of action from the statute at issue.  *See R.J. Gaydos*, 773 A.2d at 1143.  Rather, it seeks to identify the class who receives a "*special benefit*" from the statute—that is, the class for whom the Legislature specifically enacted the statute.  *See id.*  Here, the class with the "special benefit" from CREAMMA is "any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within [New Jersey]," N.J. Stat. Ann. § 24:6I-34, not prospective employees who may use marijuana, given that CREAMMA "reads like a licensing statute aimed at distributors," with only a single employment-related subsection "shoehorned" in, App.12 n.1.

### D.    Plaintiff's Additional Arguments, Which Are Not Tied To Any Of The *Cort* Factors, Are Legally Meritless

Zanetich raises three other arguments unmoored from any particular *Cort* factor, but these arguments are meritless as well.

*First*, Zanetich argues that the district court "applied an incorrect legal test" because it stated that "federal courts 'should be even less inclined' than state courts to imply private rights of action from state statutes and regulations."  App.13 (quoting *MHA, LLC v. Amerigroup Corp.,* 539 F. Supp. 3d 349, 354–55 (D.N.J. 2021)); Br.14, 16.  As a threshold matter, this objection is legally irrelevant, given that this

Court reviews the district court's judgment *de novo*. *Carpenters Health*, 837 F.3d at 382. As explained in full above, the *Cort* factors weigh against finding an implied cause of action in CREAMMA as a matter of law. *Supra* Part I.A–C. In any event, Zanetich is overreading the district court's language, which merely parallels New Jersey courts' "reluctan[ce] to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos*, 773 A.2d at 1142.

*Second*, Zanetich claims that finding an implied cause of action in CREAMMA is necessary to prevent the Act's "explicit statutory language" from becoming "meaningless." Br.30–32, 36. The Legislature's grant of robust regulatory and enforcement authority to the Commission fully answers this argument. As explained above, under CREAMMA, the Commission has the power to "investigate and aid in the prosecution of *every* violation" of the Act, § 24:6I-34(b)(3) (emphasis added); has "*all* powers incidental, convenient, or necessary" to enforce the Act; § 24:6I-34(b)(5) (emphasis added); and has "*all* powers necessary or proper to enable it to carry out the commission's duties, functions, and powers under [the Act]; § 24:6I-34(a) (emphasis added). So, given the

Commission's robust authority here, no part of CREAMMA is "meaningless" without an implied cause of action. *Contra* Br.30–32, 36.

To be sure, the district court did say that CREAMMA's employment provisions would be "illusory" if the Commission did not "act." App.23–24 (also mentioning the Legislature and the Supreme Court of New Jersey). But that dynamic always takes place when the Legislature chooses to place the enforcement authority for a statute with a government official or body, such as "the Attorney General," *R.J. Gaydos*, 773 A.2d at 1143, rather than with private plaintiffs through individual causes of action. The need for "[a]gency enforcement" of the statute to make the statutory protections meaningful does not weigh in favor of finding an implied cause of action in that statute. *Wisniewski*, 510 F.3d at 305. In fact, the opposite is true. "[A]gency enforcement creates a strong presumption against implied private rights of action that must be overcome." *Id.*

*Finally*, Zanetich argues that other States have found implied causes of action in their "cannabis legalization laws," Br.37–39, but that too is legally irrelevant. Many of the States that Zanetich cites have statutes that, in contrast to CREAMMA, do not empower a state agency

to enforce their employment provisions, which Zanetich effectively admits. Br.38 (discussing *Freeman Expositions, LLC v. Eighth Judicial Dist. Court,* 520 P.3d 803, 808–09 (Nev. 2022)); *see also id.* at 38–39 (discussing *Chance v. Kraft Heinz Foods Co.*, No. CV K18C-01-056 NEP, 2018 WL 6655670, at *6 (Del. Super. Ct. Dec. 17, 2018) ("[N]o agency or commission has been tasked with enforcement of the anti-discrimination provision."), and *Callaghan v. Darlington Fabrics Corp.*, No. PC-2014-5680, 2017 WL 2321181, at *5 (R.I. Super. May 23, 2017) ("[N]o state department is given authority to administer" the provision in question.)). The remaining States apply a materially different implied-cause-of-action test than does New Jersey. *See Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967 (Pa. Super. C. 2021) (giving no particular weight to the second *Cort* factor); *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.,* 537 F. Supp. 3d 852, 860 (E.D. Pa. 2020) (applying *Palmiter*); *Noffsinger v. SSC Niantic Operating Co. LLC*, 273 F. Supp. 3d 326 (D. Conn. 2017) (analyzing legislative intent to deny, rather than to create, a private right of action); *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761 (D. Ariz. 2019) (not applying the *Cort* framework in the same

manner as New Jersey). Accordingly, these other States' statutes provide
no help to Zanetich under the controlling New Jersey standard.

## II. New Jersey Common Law Does Not Recognize A Claim From A Prospective Employee Against A Prospective Employer For Failure To Hire

The district court also correctly dismissed Zanetich's second count,
which alleged that Walmart's failure to hire him violated New Jersey
public policy, as New Jersey common law does not recognize such a claim.

A. In the New Jersey Supreme Court's landmark decision of *Pierce*,
417 A.2d 505, the Court held that "an *employee* has a [common-law] cause
of action for wrongful discharge when the discharge is contrary to a clear
mandate of public policy," with the "sources of public policy includ[ing]
legislation; administrative rules, regulations or decisions; and judicial
decisions." *Id.* at 512 (emphasis added). The Court reached that holding
after "balanc[ing] the interests of the employee, the employer, and the
public": "[e]mployees have an interest in knowing they will not be
discharged for exercising their legal rights"; "[e]mployers have an
interest in knowing they can run their businesses as they see fit as long
as their conduct is consistent with public policy"; and "[t]he public has an

interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees." *Id.* at 511.

A so-called *Pierce* claim thus extends *only* to an "employee" against his "employer" for wrongful discharge from "employment," *id.* at 511–12—meaning that *Pierce* does not recognize the claim of a *prospective* employee against his *prospective* employer for failure to hire, *see id.*; *accord Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 149 (3d Cir. 2004) ("The *Pierce* doctrine is about wrongful discharges[.]").  As "New Jersey appeals courts have time and time again found"—with no court holding to the contrary, so far as Walmart is aware—"there is no cause of action under [New Jersey] common law for failure to hire." App.23 (citing *Lerner,* 2019 WL 1468735, at *4 ("[T]he failure to hire is not a cause of action that is recognized under *Pierce.*") and *Sabatino,* 672 A.2d at 221 ("*Pierce* has not been applied to failure to hire or promote situations")); *see generally West v. Am. Tel. & Tel. Co.*, 311 U.S. 223,  237 (1940) (holding that a state appellate court's "considered judgment" on a rule of law "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *State*

*Farm*, 233 F.3d at 713 (this Court "must consider pronouncements of the lower state courts"). In short, "this is not an issue of [first] impression." App.23.

B. Zanetich's second count purports to state a common-law claim under *Pierce* for Walmart's failure to hire Zanetich after first extending him a conditional job offer, in violation of New Jersey public policy. App.33. But as the district court properly held, "there is no cause of action under [New Jersey] common law for failure to hire," App.23 (citing *Lerner*, 2019 WL 1468735, at *4, and *Sabatino,* 672 A.2d at 221); *see generally West,* 311 U.S. at 237; *State Farm*, 233 F.3d at 713, because *Pierce* applies only to the claim of an "employee" against his "employer" for wrong discharge from "employment," 417 A.2d at 511–12. Thus, the second count of Zanetich's complaint fails as a matter of law.

C. Zanetich's counterarguments are all unpersuasive.

Zanetich first argues that "the New Jersey Supreme Court has not weighed in on whether *Pierce* extends to failure-to-hire claims," Br.42, but that limitation is apparent from *Pierce* itself, 417 A.2d at 511–12. *Pierce* made clear that the common-law claim it announced for the first time extended *only* to an "employee" against his "employer" for wrongful

- 48 -

discharge from "employment," *id.*—meaning that *Pierce* itself does not recognize the claim of a *prospective* employee against his *prospective* employer for failure to hire, *see id.* Thus, there is every reason to conclude from *Pierce*'s language that the court would have dismissed the case if the plaintiff had been a job-applicant, rather than an employee, of the defendant-employer. *See* Br.41. In any event, "New Jersey appeals courts have time and time again found" that *Pierce* does not apply to failure-to-hire claims like Zanetich's, App.23, and that uniform authority also provides a powerful basis to reject Zanetich's claim here, *see infra* pp.46–48 (refuting Zanetich's efforts to distinguish this authority).

Zanetich then claims that he has asserted "a classic *Pierce* claim" because "there was an employment contract" between Walmart and himself. Br.41–42; *see also id.* at 42 ("[T]he values balanced in *Pierce* . . . all are equally applicable to the instant matter."). The assertion that Walmart and Zanetich had executed an employment contract is utterly false, finding no support in the allegations of Zanetich's complaint. In New Jersey, as elsewhere, the essential elements of a contract include an offer, acceptance, and consideration. *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992); *Sipko v. Koger, Inc.*, 70 A.3d 512, 521 (N.J.

2013). Zanetich's complaint alleges only that Walmart made a conditional job offer to him, "subject to him submitting to and passing a drug test." App.31; *see Bonczek v. Carter Wallace, Inc.*, 701 A.2d 742, 746 (N.J. App. Div. 1997) ("The employment offer was unambiguously contingent upon [a condition]."). Nowhere in the complaint does Zanetich allege facts showing that he accepted Walmart's conditional job offer, or that he satisfied the condition attached to the offer. *See generally* App.30–32. Indeed, the complaint alleges facts establishing the opposite—that Zanetich failed to satisfy the condition to the offer. *See* App.31. So, without factual allegations in the complaint showing that Zanetich validly accepted Walmart's conditional offer, there was no "employment contract" between Walmart and Zanetich, Br.42; *Weichert Co.*, 608 A.2d at 284; *Sipko*, 70 A.3d at 521, and thus Zanetich cannot assert "a classic *Pierce* claim," Br.42; *Pierce*, 417 A.2d at 511–12.

Zanetich also argues that "*Pierce*'s reasoning supports extending the cause of action to the failure-to-hire context in the limited context where a prospective employer affirmatively disqualifies a large swath of applicants for a reason that violates a clear mandate of public policy," Br.42, but that finds no support in the *Pierce* opinion itself. Again, in

*Pierce*, the New Jersey Supreme Court expressly limited the common-law claim that it was recognizing for the first time to an "employee" against his "employer" for wrongful discharge from "employment," after the court itself "balance[d]" the competing considerations from "[e]mployees," "[e]mployers," and "[t]he public." 417 A.2d at 511–12. *Pierce* grounded this limited exception to at-will employment on, as relevant here, the employees' "interest in knowing they will not be discharged for exercising their legal rights" and the public's "interest in employment stability." *Id.* at 511. Those justifications are not present with *prospective* employees, as their lack of employment means that they cannot logically have an interest in "not be[ing] discharged," and they do not affect the public's interest in "employment stability." *Id.*

Finally, Zanetich criticizes the uniform state-court case law rejecting his argument that *Pierce* would apply under the circumstances here, but he does not cite any authority that would justify this Court departing from that case law. Br.42–43. In each case, the New Jersey appellate courts considered a *Pierce* claim and explained—either in an express holding or in considered *dicta*—that *Pierce* does not apply to prospective employees. *See Lerner*, 2019 WL 1468735, at *4; *Sabatino,*

672 A.2d at 221; *see generally West*, 311 U.S. at 237 (a state appellate court's "considered judgment" on a rule of law "is a datum for ascertaining state law"); *State Farm*, 233 F.3d at 713. These decisions accord with this Court's recognition that "[t]he *Pierce* doctrine is about wrongful discharges[.]" *Conoshenti*, 364 F.3d at 149. And while *Lerner* is unpublished, Br.42–43, it still serves as a decision of a "lower state court[ ]," *State Farm*, 233 F.3d at 713, that "convincingly [ ] show[s] how the highest court in the state would decide the issue at hand," *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

## III. The District Court Acted Well Within Its Broad Discretion In Not *Sua Sponte* Giving Plaintiff The Opportunity To Amend His Complaint

Although Zanetich never sought leave from the district court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a), he nevertheless argues now that the district court committed legal error by failing to give him leave to amend *sua sponte*. Br.43–45. However, the district court was under no obligation to *sua sponte* grant Zanetich leave to amend, including because of the broad discretion district courts enjoy over such matters. In any event, granting Zanetich leave to amend now would be futile and inequitable.

A. Under Rule 15(a), as relevant here, a plaintiff "may amend" its complaint with "the court's leave," Fed. R. Civ. P. 15(a)(2), with the decision to grant such leave falling within the court's broad discretion, *see Lake v. Arnold*, 232 F.3d 360, 373–74 (3d Cir. 2000). However, "in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007); *see also, e.g.*, *Ramsgate Ct. Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006). So, a "district court need not worry about amendment when the plaintiff does not properly request it." *LabMD Inc. v. Boback,* 47 F.4th 164, 192 (3d Cir. 2022) (citation omitted).

B. Here, Zanetich did not move for leave to amend his complaint. App.2–3. This Court can thus reject Zanetich's leave-to-amend arguments out of hand, because a "district court need not worry about amendment when the plaintiff does not properly request it," *LabMD,* 47

F.4th at 192; *Fletcher-Harlee*, 482 F.3d at 252, including because of its wide discretion here, *see Lake*, 232 F.3d at 373–74.

C. In the Appellant's Brief, Zanetich claims that the district court should have *sua sponte* granted him leave to amend his complaint under the special leave-to-amend rule that this Court applies in civil-rights cases, but that argument fails for multiple reasons. Br.43–45.

As this Court has explained, "in civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim," *LabMD,* 47 F.4th at 192 (citation omitted), "unless an amendment would be inequitable or futile, *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). While it is unclear whether "civil rights cases" includes any cases outside of the 42 U.S.C. § 1983 context, *see Ne. Revenue Servs., LLC v. Maps Indeed, Inc.,* 685 Fed. App'x 96, 103 & n.8 (3d Cir. 2017), it is clear that, in order to obtain the benefit of this special leave-to-amend rule, a plaintiff must actually "offer . . . argument" for why his case "should be considered" a civil-rights case, rather than "ordinary civil litigation," *Kemezis v. Matthews*, 394 Fed. App'x 956, 959–60, 959 n.5 (3d Cir. 2010).

Zanetich fails to develop any argument for why his case is a civil-rights case within the scope of this Court's special leave-to-amend rule, rather than "ordinary civil litigation" falling outside of that rule. *Id.* His only mention of the words "civil rights" in the leave-to-amend section is a quote of this Court's *LabMD* decision, Br.43, which is not sufficient to explain why, based on the facts of this specific case, Zanetich has presented a civil-rights case, *see Kemezis*, 394 Fed. App'x at 959–60, 959 n.5; *Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). So, given Zanetich's forfeiture on this dispositive point, this Court's special leave-to-amend rule categorically does not apply here. *Kemezis*, 394 Fed. App'x at 959–60, 959 n.5.

If this Court were nevertheless to conclude that Zanetich has presented a civil-rights case that falls within the Court's special leave-to-amend rule, the Court still should reject Zanetich's leave-to-amend arguments because granting leave to amend would be "inequitable or futile." *Alston*, 363 F.3d at 235; *Grayson,* 293 F.3d at 108. Zanetich does not argue that he could plead additional factual allegations that would enable his complaint to survive a motion to dismiss under Rule 12(b)(6), *see generally* Br.43–45, nor could he, given that the fatal flaws of his

complaint lie in his misunderstanding of New Jersey law, *see supra* Parts I–II. Instead, Zanetich argues only that, if he were granted leave to amend, he could pursue "alternative legal theories" against Walmart. Br.44 (listing, without elaboration, "breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with prospective economic relationship, negligence, and negligence *per se*, and infringement on Plaintiff's right to privacy"). Yet, Zanetich does not adequately develop any of these "alternative legal theories," Br.44, to show that any one of them could survive a motion to dismiss, *see Laborers' Int'l Union*, 26 F.3d at 398, so affording him leave to amend to assert these theories now would be "futile," *Alston*, 363 F.3d at 235; *Grayson,* 293 F.3d at 108. Further, allowing Zanetich to amend his complaint to pursue this spaghetti-against-the-wall approach now would be plainly "inequitable" to Walmart, *Alston*, 363 F.3d at 235; *Grayson,* 293 F.3d at 108, as his "alternative legal theories," Br.44, would "fundamentally alter[ ] the proceeding and could have been asserted earlier." *Cureton v. NCAA*, 252 F.3d 267, 274 (3d Cir. 2001); *see also Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d

820, 823–24 (3d Cir. 1978) ("It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment.").

## IV.    This Court Should Not Certify To The New Jersey Supreme Court

As a final effort, Zanetich asks this Court to certify to the New Jersey Supreme Court the questions of whether CREAMMA implies a private right of action for individuals and/or whether New Jersey common law provides a prospective employee with a cause of action against a prospective employer based on a failure-to-hire theory, under *Pierce.* Br.45–47. This Court should deny Zanetich's certification motion.

A. Under Local Appellate Rule 110.1, this Court "may certify [ ] a question" to a State's Supreme Court "[w]hen the procedures of the highest court of a state provide for certification . . . of questions arising under the laws of that state which will control the outcome of a case pending in th[is] [Court]." L.A.R. Misc. 110.1; *United States v. Defreitas,* 29 F.4th 135, 141 (3d Cir. 2022); *see generally* N.J. Ct. R. 2:12A. This Court considers "several factors" when determining "whether certification is appropriate:" (1) "the relevant question's eventual resolution should be unclear and control an issue in the case"; (2) the "'importance' of the question," which includes consideration of "a state's

interest in the interpretation of its own law as well as [this Court's] interest in supporting cooperative judicial federalism"; and (3) "judicial economy," which "encompasses the actions of the parties as well as the cost effectiveness of certification." *Defreitas*, 29 F.4th at 141–42.

B. Here, all of the *Defreitas* factors weigh against Zanetich's request for certification to the New Jersey Supreme Court.

Under the first factor, resolution of the controlling issues here is not "unclear" under New Jersey law. *Id.* at 141. As for Zanetich's CREAMMA claim, although whether the Act implies a right of action is a question of first impression, the New Jersey Supreme Court's well-established, three-factor test based on *Cort* controls the outcome, *e.g.*, *R.J. Gaydos*, 773 A.2d at 1142, thus the resolution of this claim is not "unclear," *Defreitas*, 29 F.4th at 141. As for Zanetich's purported claim under *Pierce*, its proper resolution is not unclear either, given that *Pierce* itself and uniform decisions from the New Jersey appeals courts preclude prospective employees from asserting this kind of claim. *Pierce*, 417 A.2d at 511–12; *Lerner,* 2019 WL 1468735, at *4, *Sabatino,* 672 A.2d at 221; App.23 ("[T]his is not an issue of [first] impression.").

The second *Defreitas* factor counsels against certification as well. *Defreitas*, 29 F.4th at 142. For Zanetich's CREAMMA claim, "[a]bstaining to allow the New Jersey state courts to interpret the Act would be fruitless because those courts, even applying 'judicial surgery,' are not empowered to completely rewrite statutes," *Planned Parenthood of Cent. New Jersey v. Farmer*, 220 F.3d 127, 150 (3d Cir. 2000) (citing *Hamilton Amusement Ctr. v. Verniero*, 716 A.2d 1137 (N.J. 1998)), which is what would be required to find an implied cause of action here. As for Zanetich's *Pierce* claim, this is not an "important" issue, *Defreitas*, 29 F.4th at 142, as, again, the New Jersey Supreme Court and New Jersey appellate courts have already (and uniformly) decided it, *supra* Part II.

Finally, given that the first two *Defreitas* factors both weigh against certification, certification here would also not be in the interest of judicial economy, given the needless additional burdens it would impose on the New Jersey Supreme Court, this Court, and the parties. *Defreitas*, 29 F.4th at 142.

C. Zanetich's counterarguments are unavailing. As for Zanetich's CREAMMA claim, while the New Jersey Supreme Court has not determined whether the Act itself contains an implied cause of action,

Zanetich overlooks the fact that well-settled New Jersey Supreme Court precedent makes the answer to that question clear, Br.46–47, meaning that this Court can "confidently predict" how New Jersey's high court would rule, *Delta Funding Corp. v. Harris*, 426 F.3d 671, 675 (3d Cir. 2005) (mem.). And as for his supposed *Pierce* claim, Zanetich is incorrect when he argues that "[n]either the New Jersey Supreme Court nor the New Jersey Superior Court—Appellate Division" has decided this issue, Br.46–47, given that, as explained repeatedly above, both courts have categorically held that *Pierce* claims do not extend to prospective employees, *supra* Part II.

## CONCLUSION

This Court should affirm the district court's judgment dismissing Plaintiff's complaint for failure to state a claim.

Dated: October 13, 2023

Respectfully submitted,

TRACEY E. DIAMOND
CHRISTOPHER J. MORAN
LEIGH H. MCMONIGLE
CARLY ROTHMAN SIDITSKY
HAMILTON SANDERS LLP
301 Carnegie Center
Suite 400
Princeton, NJ 08540-6227
(609) 951-4235 (TD)
(215) 981-4169 (CM)
(215) 981-4627 (LM)
(609) 951-4140 (CRS)
tracey.diamond@troutman.com
christopher.moran@troutman.com
leigh.mcmonigle@troutman.com

*/s/ Misha Tseytlin*

MISHA TSEYTLIN
(WI BAR NO. 1102199)
*Counsel of Record*
KEVIN LEROY
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Attorneys for Defendants-Appellees*

# COMBINED CERTIFICATIONS

I hereby certify that:

1.     At least one of the attorneys whose names appear on the foregoing brief, including the undersigned, is a member of the bar of this Court, as required by Local Rule 28.3(d).

2.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 12,174 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook size 14 font.

4.     The text of the electronic versions of this brief filed on ECF are identical to the text of the paper copies filed with the Court.

5.     The electronic versions of the brief filed on ECF were virus checked using Windows Defender Advanced Threat Protection Antivirus,

Version: 1.399.246.0 (last update: 10/8/2023 at 4:47AM EST) and no virus was detected.

6.     On October 13, 2013, I filed the foregoing brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, and thereafter caused ten copies of the foregoing brief to be served via United States First Class Mail, on the following:

Clerk's Office
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106-1790


Dated: October 13, 2023

/s/ Misha Tseytlin
MISHA TSEYTLIN