# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

No. 23-1996

---

ERICK ZANETICH

Appellant/Plaintiff,

vs.

WAL-MART STORES EAST, INC., et al.,

Appellees/Defendants

---

## APPELLANT'S REPLY BRIEF

---

APPEAL FROM FINAL JUDGMENT GRANTING MOTION TO
DISMISS ENTERED ON MAY 25, 2023 IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
AT CIVIL ACTION NO. 1:22-cv-05387-CPO-EAP

---

Justin L. Swidler, Esq. (PA #205954)
Joshua Boyette, Esq. (PA #309863)

SWARTZ SWIDLER LLC
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417

Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES................................................................... iv

I.    INTRODUCTION ....................................................................... 1

II.   LEGAL ARGUMENT .................................................................. 3

A. The First *Cort* Factor Supports Plaintiff Because He Is Part of the Class of Individuals CREAMMA Was Enacted to Protect. ................................................. 3

B. The Text, Structure, and Context of CREAMMA under the Second *Cort* Factor Do Not Militate Against an Implied Private Right of Action. .................... 5

1. Defendant's Textual Arguments Regarding the Second *Cort* Factor Should Be Rejected. ................................................................................. 5

2. The Legislature Did Not Empower the Commission to Enact a Comprehensive Regulatory Scheme to Enforce CREAMMA's  Consumer and Employment Anti-Discrimination Protections .................................................... 9

3. The Regulation of The Cannabis Marketplace Does Not Suggest That The Consumer And Employment Protections of CREAMMA Are Unenforceable. 13

4. New Jersey Case Law Has Consistently Held Rights-Creating Employment Laws Include Implied Private Rights of Action .............................................. 15

C. A Private Right of Action Is Fully Consistent with CREAMMA's Purpose of Extending Broad Civil Protections to Adult Cannabis Users. ............................. 17

D. Defendant's *Pierce* Arguments Misconstrues the Task of a Federal Court Sitting in Diversity ............................................................................... 19

E. A CREAMMA Employment Discrimination Claim Is a Civil Rights Claim Because it Vindicates the New Jersey Constitutional Right to use Cannabis. .... 22

F. Certification to the New Jersey Supreme Court Is Appropriate and Warranted. ....................................................................................... 23

III.  CONCLUSION ............................................................................ 26

IV.   CERTIFICATION OF BAR MEMBERSHIP ............................... 27

V.    CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF ............. 28

VI.   CERTIFICATE OF VIRUS CHECK ........................................... 29

VII. CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION 29

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Abbott v. Abbott,*
560 U.S. 1 (2010) ............................................................ 13

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ........................................................ 12

*Allen v. State Bd. of Elections,*
393 U.S. 544, 89 S. Ct. 817 (1969) ................................... 9

*Aponte-Correa v. Allstate Ins. Co.,*
162 N.J. 318 (2000) ........................................................ 20

*Campione v. Adamar, Inc.,*
155 N.J. 245, 714 A.2d 299 (1998) ................................. 23

*Cannon v. Univ. of Chi.,*
441 U.S. 677 (1979) ........................................... 12, 18, 9

*Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.,*
724 F.2d 369 (3d Cir. 1983) ........................................... 26

*Estate of Burns v. Care One at Stanwick, L.L.C.,*
468 N.J. Super. 306, 258 A.3d 368 (App. Div. 2021) ....... 21

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002) ........................................................ 11

*J.I. Case Co. v. Borak,*
377 U.S. 426 (1964) .......................................................... 9

*Jarrell v. Kaul,*
223 N.J. 294 (2015) ........................................................ 30

*LabMD Inc. v. Boback,*
47 F.4th 164 (3d Cir. 2022) ............................................ 29

*Lally v. Copygraphics,*
85 N.J. 668 (1981) ............................................... 12, 21, 9

*N.J. Soc. for Prevention of Cruelty to Animals v. N.J. Dep't of Agric.,*

196 N.J. 366, 955 A.2d 886 (2008) ................................................. 15

*Peper v. Princeton Univ. Bd. of Trs.*,
151 N.J. Super. 15 (App. Div. 1977) ......................................... *passim*

*Pierce v. Ortho Pharm. Corp.*,
84 N.J. 58 (1980) ...................................................................... 27

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
168 N.J. 255 (2001) .................................................................. 12

*Rehab. Act, Cummings v. Premier Rehab. Keller, P.L.L.C.*,
596 U.S. 212, 142 S. Ct. 1562 (2022) ........................................ 9

*State Farm Mut. Auto. Ins. Co. v. Armstrong*,
949 F.2d 99 (3d Cir. 1991) ....................................................... 26

*State v. Gomes*,
253 N.J. 6, 288 A.3d 825 (2023) ....................................... 24, 29, 7

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979) .................................................................. 19

*United States v. City of N.Y.*,
359 F.3d 83 (2d Cir. 2004) ....................................................... 29

*United States v. Defreitas*,
29 F.4th 135 (3d Cir. 2022) ................................................. 30, 31

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ........................................................ 16, 17

*Winslow v. Corp. Exp., Inc.*,
364 N.J. Super. 128 (App. Div. 2003) ...................................... *passim*

## Statutes

N.J. Stat. Ann. § 24:6I-31 ............................................................ *passim*

## Rules

Fed. R. App. P. 32 ...................................................................... 37

## I.    INTRODUCTION

Appellant-Plaintiff ("Plaintiff") primarily relies on his Opening Brief to rebut arguments made by Appellees-Defendants ("Defendant") in the Answering Brief. Nevertheless, Defendant's arguments warrant reply insofar as Defendant argues the *Cort* factors do not imply the legislature intended to create a private right of action for the employment protections set forth in N.J. Stat. Ann. § 24:6I-31, *et seq*. ("CREAMMA"), and specifically the protections set forth in § 24:6I-52(a)(1), can and should be adjudicated by the Cannabis Regulatory Commission ("Commission"), and that CREAMMA does not contain the rights-creating language which has been the hallmark of finding an implied private right of action in similar employment-related civil rights statutes. Further, Plaintiff herein refutes Defendant's assertion that the legal questions central to this case are so straightforward that this Court should address them directly instead of certifying the questions to the Supreme Court of New Jersey, despite their significant import to the development of New Jersey employment and civil rights jurisprudence.

Defendant's argument that the legislature did not intend to create a right of action to enforce the employment provisions of CREAMMA hinges on two contentions: (1) the legislature's purpose in enacting CREAMMA was merely to set up the rules for the legal cannabis marketplace; and (2) the legislature provided a robust and comprehensive administrative enforcement mechanism whereby

individuals can enforce their CREAMMA rights through the Cannabis Regulatory Commission. Defendant argues that these two (incorrect) conclusions about CREAMMA are strong evidence that the legislature intended the consumer and employment provisions to provide rights without a private remedy, comparing CREAMMA to such comprehensive regulatory schemes as the Casino Control Act. But because both contentions are wrong, Defendant's argument as to the Legislature's intention fails. CREAMMA's underlying purpose is legalize adult cannabis use, and CREAMMA limits the Commission's regulatory authority to cannabis marketplace participants, even while it enacts a broader set of criminal and civil protections to accomplish its broad public policy goals. Accordingly, Defendant's analysis of the *Cort* factors is wrong, and should be rejected.

Defendant also argues that the Court should not certify this case to the New Jersey Supreme Court under the *Defreitas* factors because the resolution of the issue under state law is not unclear. Absent a ruling from the New Jersey Supreme Court, this Court's interpretation of CREAMMA will be precedent only within the federal judiciary. This will create opportunities for divergent opinions both between federal and state courts, and within state courts themselves, until the New Jersey Supreme Court rules on this issue. Moreover, uncertainty in the construction of CREAMMA and the Commissions' authority is likely to create chaos and disorder at the

administrative level. Certification to the New Jersey Supreme Court is therefore warranted under *Defreitas*.

Accordingly, for the reasons set forth in detail below, and for the reasons set forth in Plaintiff's Opening Brief, the Court should reverse the decision of the District Court and remand this case back to the District Court. In the alternative, it should certify the questions as to CREAMMA and *Pierce* to the New Jersey Supreme Court pursuant to Local Appellate Rule 110.1.

## II.    LEGAL ARGUMENT

### A. <u>The First *Cort* Factor Supports Plaintiff Because He Is Part of the Class of Individuals CREAMMA Was Enacted to Protect.</u>

The first *Cort* factor looks to whether Plaintiff is part of the class for whose special benefit CREAMMA was enacted. The District Court correctly determined that Plaintiff, as an adult cannabis user, falls within this class. App. 12. Defendant describes this as a "close question" arguing that the actual beneficiaries of CREAMMA, as per Section 24:6I-34(a), are those involved in the cannabis market—buyers, sellers, cultivators, producers, manufacturers, transporters, and deliverers. As set forth in more detail below, reading Section 24:6I-34(a) to set forth "the class for whose special benefit the statute was enacted" confuses ends and means. In fact, this section identifies the classes, specifically those involved in the cannabis market, that CREAMMA authorizes the Commission to **<u>regulate</u>** through its rulemaking powers.

CREAMMA's consumer and employment provisions are not so limited. These provisions prohibit housing, education, employment, and medical discrimination against "**<u>any person</u>**" with cannabinoid metabolites in their body. CREAMMA was enacted to codify the "legalization [of the] the possession, consumption, and commercialization of cannabis and products containing it by persons twenty-one years of age or older" demanded by the people of New Jersey when it approved N.J. Const., Art. IV, Sec. VII, Para. 13, during the November 2020 general election. *See also State v. Gomes,* 253 N.J. 6, 23, 288 A.3d 825, 835 (2023). CREAMMA is a key component of a series of laws enacted "to establish a broad regime of civil and criminal provisions to regulate the newly legalized activity and achieve the constitutional amendment's public policy goals." *Id.* To safely legalize cannabis, New Jersey determined to establish a legal regulated cannabis marketplace. But New Jersey did not undertake this major endeavor to create new market opportunities, but rather to legalize and regulate cannabis consumption.

Defendant—following the District Court—characterizes CREAMMA as reading "like a licensing statute" with an employment provision shoehorned in." App. 12, fn. 1. This argument confuses the entities being **<u>regulated</u>** with the individuals being **<u>benefited</u>**. The public policy embodied in the constitutional amendment was the legalization of the possession and consumption of cannabis by adults. Plaintiff, as a user of cannabis, falls within the class CREAMMA was enacted

to benefit. The District Court was correct to find that the first *Cort* factor supports finding an implied private right of action.

### B. **The Text, Structure, and Context of CREAMMA under the Second *Cort* Factor Do Not Militate Against an Implied Private Right of Action.**

The second *Cort* factor asks the Court to determine and give effect to the Legislature's intent to determine if the Legislature intended to allow for an implied private right of action. Defendant argues that the text, structure, and statutory context of CREAMMA show the Legislature did not have such intention. For the reasons that follow, Defendant's arguments should be rejected.

#### 1. **Defendant's Textual Arguments Regarding the Second *Cort* Factor Should Be Rejected.**

##### a. All Implied Private Rights Under *Cort* Lack an Explicit Authorization of a Private Right of Action by Definition.

Defendant argues that the absence of an explicit private right of action is *ipso facto* reliable textual evidence the Legislature intended to preclude private actions. Answering Brief at 26. Defendant refers to this as the "dog that didn't bark."

The problem with this argument is it invalidates *Cort* entirely. Cort **only** comes into play **when** there is no explicit private cause of action. In other words, *Cort* cannot require courts to focus on why the dog did not bark if it only applies to cases where, by definition, there are no dogs allowed.

In fact, *Cort* stands for the opposite proposition: that the absence of an explicit private cause of action *is not* a reliable indicator the legislature did not intend to

create one, and instead, courts should look at textual, structural, and contextual evidence to discern the legislature's true intent and purpose.

Following or prefiguring the actual *Cort* test, private rights of action have been found for Section 14(a) of the Securities Exchange Act of 1934, *J. I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964), Section 5 of the Voting Rights Act, *Allen v. State Bd. of Elections,* 393 U.S. 544, 557, 89 S. Ct. 817, 827 (1969), Title VI of the Civil Rights Act of 1964, *Cannon v. University of Chicago,* 441 U.S. 677, 702-703 (1979), Title IX of the Education Amendments Act of 1972, *id.,* Section 504 of the Rehabilitation Act, *Cummings v. Premier Rehab Keller,* P.L.L.C., 596 U.S. 212, 142 S. Ct. 1562, 1570 (2022), the Affordable Care Act, *id.,* the pre-amended New Jersey Against Discrimination, *Peper v. Princeton Univ. Bd. of Trustees,* 151 N.J. Super. 15, 23 (App. Div. 1977), New Jersey Workers Compensation retaliation, *Lally v. Copygraphics,* 85 N.J. 668, 670-71 (1981), and the pre-amended New Jersey Wage Payment Act. *Winslow v. Corp. Exp., Inc.*, 364 N.J. Super. 128, 136 (App. Div. 2003). In each of these cases, by definition, the "explicit private right" dog did not bark. Under Defendant's test, all these cases were wrongly decided. The Court should not adopt a test inconsistent with sixty years of precedent from *Borak* and *Peper* to *Cummings* and *Winslow*, and reject this argument.

6

b. <u>CREAMMA's Employment Provision Creates Rights-Creating Language.</u>

Defendant argues the text of CREAMMA's employment protection provision does not support finding an implied private right of action because it does not contain "rights-creating" language:

> [T]he relevant portion of Subsection 52 here—"[n]o employer shall refuse to hire or employ any person . . . because that person does or does not . . . use cannabis items," § 24:6I-52(a)(1)—does not contain [rights-creating] language, given that it "focus[es] on the person regulated" (the employer) "rather than the individuals protected" (the prospective employee), meaning there is "no implication of an intent to confer rights on a particular class of persons."

Appellees' Brief at 33.

Because CREAMMA is drafted with "employer" as the subject of the sentence and the "person" who does or does not use cannabis is the direct object, Defendant claims this provision is one which "focus[es] on the person regulated" rather than the "individual protected," and, therefore, does not qualify as rights-creating language.

Apparently, whether CREAMMA's rights can be vindicated by individuals depends on whether the statute's drafters chose to use the active or passive voice. Certainly, the provision could be rewritten with **no** change to its meaning or emphasis as "No person shall be refused hire or employment by an employer because that person does or does not . . . use cannabis items."

Defendant's assertion that a quirk of grammar provides the rule of decision should be categorically rejected. Demonstrating the fallacy of Defendant's argument, the First Amendment to the United States Constitution follows, found in the Bill of Rights, uses the same syntactic structure as CREAMMA to endow Americans with freedom of religion:

> "**Congress** shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...

U.S. Const., amend. I. (emphasis added).

Defendant's cited cases do not support its argument that CREAMMA's employment provisions are focused on regulating employers instead of providing cannabis users with a right to be free from employment discrimination. In *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, the Supreme Court found that FERPA's provision which prohibited the Secretary of Education from making funds available to any educational agency or institution which had a policy or practice of releasing educational records to unauthorized persons did not create an individual right which could be vindicated by impacted students and parents through § 1983, holding that this provision was "two-steps removed" from the interests of the students and parents. In *Alexander v. Sandoval*, the U.S. Supreme Court contrasted Section 601 of Title VI—which contains rights-creating language substantially like the rights-creating language in CREAMMA's employment provision—with Section 602, which merely empowered a federal agency to engage in rulemaking, and therefore

8

could not evidence an intent by Congress to authorize an implied private right of action to enforce the agency's resulting rules and regulations. 532 U.S. 275, 289 (2001). Neither case suggests that CREAMMA's language is not the exact type of "rights conferring" language that justified finding an implied private cause of action for Title IX and Title VI in *Cannon v. University of Chicago*, 441 U.S. 677, 694 (1979). Nor does Defendant distinguish CREAMMA from New Jersey case law holding rights-creating statutes without explicit causes of action are construed to include an implied private right of action. *See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 274 (2001) (*citing Parks v. Pep Boys*, 282 N.J. Super. 1, 15, 659 A.2d 471 (App. Div. 1995), and *Bortz v. Rammel*, 151 N.J. Super. 312, 321, 376 A.2d 1261 (App. Div. 1977); *Lally v. Copygraphics*, 85 N.J. 668, 670-71, (1981); *Winslow v. Corp. Exp., Inc.,* 364 N.J. Super. 128, 136 (App. Div. 2003); *Peper v. Princeton Univ. Bd. of Trustees*, 151 N.J. Super. 15, 23 (App. Div. 1977).

2. **The Legislature Did Not Empower the Commission to Enact a Comprehensive Regulatory Scheme to Enforce CREAMMA's Consumer and Employment Anti-Discrimination Protections.**

a. <u>Non-Licensed Businesses Such as Defendant Are Outside of The Commission's Jurisdiction and Enforcement Power.</u>

Defendant argues that the structure of the statute under the second *Cort* factor militate against finding an implied private right of action because CREAMMA "empowers the Commission to enforce CREAMMA's provisions," and the presence of "a government enforcement mechanism for violations of the statute" is strong

9

indicia that the legislature did not intend to provide a private right of action. Appellees' Brief at 27, 29.

First, even if the Commission could enforce CREAMMA's employment provisions against Defendant, this would not negate the implied private cause of action. Title IX contains an administrative mechanism, but in *Franklin v. Gwinnett County Public Schools*, the implied right of action was upheld despite agency enforcement, recognizing that limited administrative resources and discretion would leave most impacted individuals without remedy. 503 U.S. 60, 63-64, n. 3 (1992).

Still, the Court need not apply *Franklin* because CREAMMA does not contain administrative enforcement mechanism for investigating and adjudicating Section 52 violations against New Jersey employers. CREAMMA circumscribes the Commission's authority such that any attempt by the Commission to enforce Section 52 would be *ultra vires*. *See* App. 12 at fn. 1.

The interpretation of a statute "begins with its text." *Abbot v. Abbot,* 560 U.S. 1, 10 (2010). Here, contrary to Defendant's misreading, CREMMA did not empower the Commission "to handle all aspects of enforcement of CREAMMA," Answering Brief at 30. Rather, the Commission's authority was significantly more limited:

> The Cannabis Regulatory Commission shall have **all powers** necessary or proper to enable it **to carry out the commission's duties, functions, and powers under P.L.2021, c.16 (C.24:6I-31 et al.)**.

N.J. Stat. § 24:6I-34(a).

In other words, the Commissions was granted broad authority to exercise its limited powers, not to enforce the entire statutory scheme. The next sentence describes the limits on those powers:

> The **jurisdiction, supervision, duties, functions, and powers of the commission extend to any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items** within this State.

*Id.* (emphasis added).

Consistent with the statutory text, the Commission itself interprets its authority as limited by § 24:6I-34(a):

> The NJ-CRC is responsible for writing and enforcing the regulations that direct the sales, purchases, and business activities related to cannabis in New Jersey. …
>
> **The NJ-CRC does not perform any law enforcement duties or regulate unpermitted or unlicensed entities in any way** … or overrule or conflict with existing statutes.

https://www.nj.gov/cannabis/resources/faqs/commission/ (emphasis added) (last visited Nov. 15, 2023)

New Jersey Courts give an agency's interpretation of statutes within the scope of its authority "great deference." N.*J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.,* 196 N.J. 366, 385, 955 A.2d 886 (2008). Here, the Commission's interpretation of its limited authority is fully consistent with the limits imposed by Section 34(a). These limits are fatal to Defendant's argument.

11

Wal-Mart does not buy cannabis in New Jersey. Wal-Mart does not sell cannabis in New Jersey. It does not cultivate cannabis in New Jersey, and it does not manufacture cannabis in New Jersey. It does not transport or deliver cannabis in New Jersey. Accordingly, Wal-Mart cannot be subject to the Commission's jurisdiction, control, or enforcement power. Consequently, Defendant's misguided arguments cannot dispute the district court's own acknowledgment: unless an implied private right of action is found, the employment provision in Section 52 is "illusory" and "meaningless." Basic tenets of statutory construction prohibit interpreting the statute in such a way. *See Aponte-Correa v. Allstate Ins. Co.*, 162 N.J. 318, 335 (N.J. 2000).

> b. The General Assembly Did Not Intend to Grant the Commission Broad Quasi-Judicial Powers Without Explicit Legislative Authorization

Defendant's interpretation of the Commission's expansive authority contradicts the clear statutory language and clashes with the "major questions doctrine." This doctrine asserts that agencies need explicit, specific authorization to regulate significant economic sectors. The U.S. Supreme Court in *West Virginia v. EPA* emphasized that such extensive regulatory power is not usually granted through ambiguous language; substantial delegations demand unambiguous legislative sanction. 142 S. Ct. 2587, 2605, 2609 (2022). This principle implies that the legislature likely did not intend to delegate such broad power to the Commission.

When the General Assembly explicitly authorizes state agencies to litigate or enforce statutory rights, it does so explicitly. For instance, N.J. Stat. § 10:5-6 establishes the Division on Civil Rights to combat discrimination, detailing its broad jurisdiction and authority. Similarly, N.J. Stat. § 10:5-8.2 specifies enforcement actions under the NJLAD by the Attorney General or Division, while N.J. Stat. § 58:10-23.11u expressly empowers the Department of Environmental Protection's enforcement under the Spill Compensation and Control Act.

Defendant argues that CREAMMA's structure shows that the General Assembly did not intend to authorize an implied private right of action, but it did intend to *sub silentio* authorize the Commission to establish a quasi-legislative, quasi-judicial, quasi-investigatory leviathan in which every employer, landlord, medical provider, and school in New Jersey could be administratively prosecuted for discriminating against cannabis users. Defendant would have this Court believe the General Assembly built a labyrinth to avoid placing a signpost. The Court should decline to adopt such strained construction.

### 3. The Regulation of The Cannabis Marketplace Does Not Suggest That the Consumer and Employment Protections of CREAMMA Are Unenforceable.

Defendant asserts that CREAMMA's complex licensing regulations imply the legislature did not intend for consumer and employment protections to be enforced through an implied private right of action. This argument conflates CREAMMA—

which had, at minimum, dual purposes—with single-purpose statutes whose sole effect is create a regulatory framework for an industry or activity, such as the Casino Control Act, *see, e.g., Campione v. Adamar, Inc.,* 155 N.J. 245, 256, 714 A.2d 299, 304 (1998)—and fails to meaningfully construe the legislature's intent. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979) (holding that the *Cort* factors are meant to serve the ultimate purpose of discerning legislative intent). Here, CREAMMA, like many statutes, was enacted to accomplish multiple goals and purposes, and the legislature could and did have different intents with respect to these different purposes.

CREAMMA's consumer and employment protections are conceptually distinct from its licensing requirements. Accordingly, that its marketplace provisions are complex and address licensing does not mean the consumer and employment protections were meant to be ancillary to the creation of that marketplace or subordinate to the purpose of setting up such a marketplace.

Title IX amended at least four different comprehensive federal education statutes with complicated funding and regulatory provisions generally focused on directing the federal education policy. *See* 92 P.L. 318. When the Supreme Court applied *Cort* to find that Title IX contained an implied private cause of action, it did not shirk from doing so merely because Title IX had been codified as part of the omnibus federal education law.

The New Jersey Supreme Court "has held that statutory construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided." *Aponte-Correa v. Allstate Ins. Co.,* 162 N.J. 318, 335 (N.J. 2000). CREAMMA's employment protection provision speaks in clear and direct rights-creating language. Nothing in that provision, or in any other part of the statute, suggests the legislature wanted those rights to be remediless merely because the legislature was enacting the enabling legislation for regulated legal cannabis marketplace as part of the same bill.

### 4. New Jersey Case Law Has Consistently Held Rights-Creating Employment Laws Include Implied Private Rights of Action.

Defendant also argues that the second *Cort* factor does not support a private right of action because *some* New Jersey employment laws contain an explicit private cause of action, while *ignoring* the case law which addresses the separate question of whether an explicit private cause of action is needed or expected in New Jersey's employment laws. Defendant supports this argument by noting that the Court should assume the legislature was "thoroughly conversant with its own legislation and the judicial construction of its statutes" and "knows how to authorize private causes of action when it desires to do so." Appellee's Brief at 32 (*citing Burns, Estate of, by & through Burns v. Care One at Stanwick, LLC*, 468 N.J. Super. 306, 319, 258 A.3d 368, 376 (Super. Ct. App. Div. 2021).

15

Defendant's argument goes wrong however because in the case of rights-protecting-employment-laws, New Jersey's legislature can and has "authorized private causes of action" merely by using the rights-creating language present here. *See Lally v. Copygraphics,* 85 N.J. 668, 670-71 (1981); *Peper v. Princeton Univ. Bd. of Trustees,* 151 N.J. Super. 15, 23 (App. Div. 1977); *Winslow v. Corp. Exp., Inc.*, 364 N.J. Super. 128, 136 (App. Div. 2003). Indeed, as the Appellate Division explained "**Our courts have readily found an implied private right of action in statutes enacted to protect employees from wrongful conduct by employers**." *Winslow*, 364 N.J. Super. at 137-38 (finding an implied right of action under the New Jersey Wage Payment Law) (emphasis added).

Given *Winslow,* and given *Burns'* suggestion that a statute should be construed by assuming the legislature legislates consistent with the judicial construction of similar statutes, *Burns* implies the legislature understood it was authorizing a private right of action by enacting a statute which protects employees from the wrongful conduct of employers. *See Winslow*, 364 N.J. Super. at 137-38.

Defendant attempts to distinguish *Peper, Winslow,* and *Lally* by arguing that these decisions construed statutes without the robust administrative enforcement mechanism present in CREAMMA. As set forth above, *CREAMMA* does not have such an administrative enforcement mechanism, while the NJLAD, Workers Compensation Statute, and NJWPL all authorized at least some administrative

oversight over the employment protections at issue in each statute. Accordingly, *Peper, Winslow,* and *Lally* all support finding CREAMMA's employment protections may be enforced through a private right of action.

### C. **A Private Right of Action Is Fully Consistent with CREAMMA's Purpose of Extending Broad Civil Protections to Adult Cannabis Users.**

Defendant argues consideration of the third *Cort* factor militates against finding a private cause of action because a private cause would be inconsistent with CREAMMA's purpose. Answering Brief at 38. This argument, like Defendant's others, fundamentally misunderstands CREAMMA.

Defendant argues CREAMMA's purpose was to create a legal cannabis marketplace for cannabis-related businesses, rather than to legalize and destigmatize adult cannabis use. Defendant's corporate-centric purpose argument is not supported by CREAMMA's text or its history. CREAMMA was enacted to codify the "legalization [of the] the possession, consumption, and commercialization of cannabis and products containing it by persons twenty-one years of age or older" demanded by the people of New Jersey when it approved N.J. Const., Art. IV, Sec. VII, Para. 13, during the November 2020 general election. *See also State v. Gomes,* 253 N.J. 6, 23, 288 A.3d 825, 835 (2023). CREAMMA was enacted as part of a trilogy of statutes which establishes "a broad regime of civil and criminal provisions to regulate the newly legalized **activity** and achieve the constitutional amendment's **public policy** goals." *Id.*

17

The establishment of a legal cannabis marketplace is dependent on and subordinate to CREAMMA's ultimate purpose—to **legalize** the use of cannabis in New Jersey by adults and make it equivalent to the use of alcohol. *See* N.J. Stat. § 24:6I-32(a). Another declared purpose was to eliminate the problems caused by the unregulated use of illegal marijuana. N.J. Stat. § 24:6I-32(c).

However, even if the purpose of CREAMMA was to create a functioning legal cannabis market, a private right of action to enforce the employment and consumer protections would be fully consistent and supporting of that purpose, because a functioning cannabis market needs cannabis buyers, and the adults will be far less likely to buy cannabis if the employment protection provision of CREAMMA is unenforceable and companies can terminate them or refuse to hire them for cannabis use. Indeed, if Defendant's argument was accepted that CREAMMA's purpose was solely to create a functioning market, then the employment provision which was drafted by the legislature and placed into CREAMMA must have been intended to serve this purpose.

Second, and more importantly, Defendant's argument fails because the legislature's purpose in enacting CREAMMA's employment protection is distinct and worthy of independent respect separate and apart from CREAMMA's marketplace provisions. The employment provision's legislative purpose is self-evident. The purpose of a statute that prohibits discrimination against cannabis users

is to **prohibit discrimination against cannabis users**. A private right of action to recover damages for this discrimination more than consistent with such purpose—it is necessary to the accomplishment of that purpose.

Accordingly, the Court should reject Defendant's argument that the third *Cort* factor militates against finding an implied private right of action.

### D. **Defendant's *Pierce* Arguments Misconstrues the Task of a Federal Court Sitting in Diversity**

Defendant argues that the Court should reject Plaintiff's arguments to extend *Pierce* to the failure-to-hire context because "this is an issue of first impression," noting that several intermediate New Jersey appellate courts have rejected attempts to extend *Pierce* to the failure-to-hire framework. This argument fails because intermediate state appellate courts do not provide federal courts sitting in diversity with the rule of decision—only the highest state court, or the court's ***prediction*** of how the highest state court would decide the issue, will determine a federal court's application of state law. *See, e.g., Compagnie des Bauxites de Guinee v. Ins. Co. of N. Am.,* 724 F.2d 369, 371–72 (3d Cir. 1983); *State Farm Mut. Auto. Ins. Co. v. Armstrong,* 949 F.2d 99, 101 (3d Cir. 1991).

Defendant suggests that because *Pierce* involved a former employee suing his former employer for wrongful termination in violation of public policy, the past **existence** of a perfected employment contract was a necessary component to the New Jersey Supreme Court's determination in *Pierce* to modify the common law of

employment. But because *Pierce* **did not** involve a prospective employee suing a future employer for wrongful failure to hire in violation of public policy, nothing in *Pierce*'s decision suggests the New Jersey Supreme Court would reject such a claim. Certainly, *Pierce* turns on the special importance of the employment relationship to justify the departure from common law. *See* 84 N.J. at 66-68 (noting the need to protect employees not covered by collective bargaining agreements from the abusive practices of employers). The broad corpus of statutory employment law recognizes that unlawful or discriminatory failure-to-hire is as pernicious and damaging as unlawful or discriminatory discharge.

*Pierce* stands for the broad proposition that the common law is flexible to the changing needs of society. *Id.* at 71. *Pierce* balanced the interests of employees, the employer, and the public—employees' interest in knowing they will not be discharged for exercising their legal rights, employers' interest in knowing they can run their business as they see fit consistent with public policy, and the public's interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees. *See id*.

Nothing about that balancing process turned on whether the employment relationship had commenced or been perfected. Prospective employees have as much interest in knowing their application for employment will not be rejected because they have exercised their legal rights as current and former employees have

in not being terminated for such exercise. Employers' interest in running their business as they see fit applies with equal force to hiring as to discharge. And the public's interest in employment stability is implicated by an unlawful failure-to-hire as much as an unlawful discharge.

Indeed, to insist on an "employment contract" is to ignore that *Pierce* was designed to protect employees without "real" employment contracts. Under at-will employment, an employer is **<u>free</u>** to terminate an employee the very second the employee commences work. Because of the nature of at-will employment, there can be no contractual claim against an employer who agrees to enter an employment contract with an employee but then terminates the contract before the employee commences work. Indeed, at-will employment can generally be understood as being employed without a contract.

Given same, there is no logical reason under *Pierce* why a failure-to-hire claim is not cognizable. It is not enough that previous intermediate appellate courts have failed to recognize such a claim. Such rulings are data which informs the Court's speculation as to how the New Jersey Supreme Court would rule, but do not exhaust such data. Certainly, were this issue to be presented to the New Jersey Supreme Court, it would not consider itself bound by **<u>any</u>** of the intermediate appellate decisions Defendant cites. Accordingly, for the reasons set forth above, and set forth

in Plaintiff's opening brief, the Court should reverse the District Court's decision dismissing Plaintiff's *Pierce* claim.

### E.  **A CREAMMA Employment Discrimination Claim Is a Civil Rights Claim Because It Vindicates the New Jersey Constitutional Right to use Cannabis.**

Defendant also argues that Plaintiff have failed to show that the instant matter was a civil rights claim such that the District Court erred by failing to *sua sponte* permit Plaintiff to amend his complaint. As set forth by the New Jersey Supreme Court, CREAMMA was enacted to codify the constitutional amendment "legaliz[ing] the possession, consumption, and commercialization of cannabis and products containing it by persons twenty-one years of age or older", N.J. Const., Art. IV, Sec. VII, Para. 13. *See State v. Gomes,* 253 N.J. 6, 23, 288 A.3d 825, 835 (2023). The New Jersey Supreme Court described CREAMMA as part of a trilogy of statues establishing a "broad regime of civil and criminal provisions to regulate the newly legalized activity and achieve the constitutional amendment's public policy goals." *Id.* As part of CREAMMA, the legislature granted cannabis users broad protection against discrimination in nearly every social domain, similar to how the NJLAD prohibits racial, gender, religious, and disability discrimination in employment, housing, and public accommodations. Freedom from discrimination has been described as a "basic civil right." *United States v. City of N.Y.,* 359 F.3d 83, 95 (2d Cir. 2004). That cannabis-use-discrimination is a new civil right in New Jersey does

not diminish that Plaintiff has brought a civil rights claim, and, under Third Circuit precedent, should have been granted the opportunity to file an amended complaint after the District Court dismissed Plaintiff's complaint. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022).

**F. Certification to the New Jersey Supreme Court Is Appropriate and Warranted.**

Finally, Defendant argues that certification to the New Jersey Supreme Court is not warranted under Local Appellate Rule 110.1 and *United States v. Defreitas,* 29 F.4th 135, 141 (3d Cir. 2022).   Defendant's argument is misplaced; *Defreitas* supports certification here.

Under the first *Defreitas* factor, the question presented must be central to the case and its resolution must be unclear.  Defendant concedes the legal questions Plaintiff seeks to certify are central to the disposition of this case, but argues the outcome is not unclear, a position at odds with the novelty of the questions presented and the extensive briefing required from both Parties.

Ignoring the numerous competing factors that the implied right of action doctrine requires of courts, Defendant argues that because the statute does not explicitly provide for a private right of action, it is "clear" that no right exists. To concur with Defendant's position would incorrectly hold that New Jersey courts do not recognize the doctrine of an implied right of action. *See Jarrell v. Kaul*, 223 N.J. 294 (N.J. 2015) ("Both the United States Supreme Court and [the New Jersey

Supreme] Court have held that a statute that does not expressly create a private cause of action may, nonetheless, implicitly create one"). Notably, New Jersey Courts engage in a comprehensive analysis when determining whether a statute implicitly allows for a private right of action, and as shown in, e.g., *Peper,* 151 N.J. Super at 23 and *Winslow*, 364 N.J. Super. at 136, readily find implied rights of actions in employment protection provisions of statutes.

The second *Defreitas* factor mandates this Court to consider the "importance of the question," taking into account "a state's interest in the interpretation of its own law as well as [this Court's] interest in supporting cooperative judicial federalism." *Defreitas*, 29 F.4th at 143. Important to this consideration is where significant public policy considerations are implicated by the decision and where there is a likelihood that the issues will recur. *Id.* In this context, the factor is unequivocally satisfied. The question holds substantial relevance to New Jersey employment law, specifically regarding whether CREAMMA's employment protection provision is "illusory" and "meaningless", App. 23, posing crucial state law queries with high potential for recurrence given the statute's significance and its widespread applicability to all New Jersey employees. Furthermore, determining if New Jersey's public policy forbids the revocation of at-will employment agreements based on criteria prohibited by CREAMMA necessitates a thorough assessment of the state's public policy considerations. Defendant nevertheless argues this factor is not met

because Defendant argues that certification would be "fruitless," *i.e.,* Defendant repeats its argument made with respect to the first factor that the resolution of the legal question is not open to reasonable debate. But the second factor is distinct from the first factor, and most importantly, Defendant does not dispute the import of the question at hand, thereby tacitly conceding the second *Defreitas* factor is met.

Concerning the third *Defreitas* factor, which assesses judicial economy, Defendant's opposition is founded on its prior arguments, centering on the claim that resolution of the legal question presented is not unclear. However, this Court's guidelines for considering this factor, which is distinct from the first factor, include a cautious approach towards requests from sophisticated litigants who either initially sought federal jurisdiction or who propose certification late in the proceedings, particularly after suffering a legal setback. Here, Plaintiff filed his case in state court; it was removed to federal court on Defendant's motion.  Similarly, Plaintiff was unable to request certification in the district court prior to the entry of judgment because the District Court of New Jersey provides no certification procedure, as the district court explicitly acknowledged in the challenged decision. App. 24, fn. 4. Plaintiff, therefore, pursuant to Local Appellate Rule 110.1, made the request in his Opening Brief, which was his first opportunity to do so since Defendant removed the case to federal court. In such circumstances, this factor weighs in favor of certifying the question.

Accordingly, despite Defendant's failure to acknowledge same, the *Defreitas* factors strongly support certifying the questions presented in this appeal to the New Jersey Supreme Court, and this Court should do so.

## III.   CONCLUSION

For the reasons set forth above, and for the reasons set forth in Plaintiff's opening brief, the Court should reverse the decision of the District Court and remand this case for further proceedings. In the alternative, the Court should certify these questions to the New Jersey Supreme Court.

Respectfully Submitted,
/s/ Justin L. Swidler
Justin L. Swidler, Esq. (PA 205954)
Joshua Boyette, Esq. (PA 309863)

SWARTZ SWIDLER LLC
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417

Attorneys for Appellant

## IV.    CERTIFICATION OF BAR MEMBERSHIP

I, Joshua S. Boyette, Esq., certify that I am a member of the Bar of the U.S.

Court of Appeals for the Third Circuit.

By:                                                    /s/ Justin L. Swidler
                                                       Justin L. Swidler

                                                       November 17, 2023

## V.    CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF

I certify that the Brief emailed/filed to the Clerk's Office and the hard copies

mailed to the Clerk's office and served on all parties are identical.

By:                                                         /s/ Justin L. Swidler
                                                            Justin L. Swidler

                                                            November 17, 2023

## VI.    CERTIFICATE OF VIRUS CHECK

I certify that the Brief was scanned for viruses using Avast! Free Antivirus.

By:                                                    /s/ Justin L. Swidler
                                                       Justin L. Swidler

                                                       November 17, 2023

## VII.  CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This Reply Brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7) because this Reply Brief contains less than 5842 words excluding the parts of the Brief exempted by Fed.R.App.P. 32(f).

This Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the style requirements of Fed.R.App.P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Office in 14 pt Times New Roman font.

By:                                                /s/ Justin L. Swidler
                                                   Justin L. Swidler

                                                   November 17, 2023