Troutman Pepper Hamilton Sanders LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606

troutman.com



**Misha Tseytlin**
misha.tseytlin@troutman.com

February 9, 2024

**VIA ECF**

Patricia S. Dodszuweit, Clerk
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Re:     *Erick Zanetich v. Wal-Mart Stores E. Inc*., No.23-1996 (3d Cir.)

Dear Clerk:

Defendants-Appellees Wal-Mart Stores East, Inc. and Sam's East, Inc. (collectively, "Walmart") submit this letter brief in response to this Court's Order directing the parties to "address[ ] whether this action satisfies the amount-in-controversy requirement for subject matter jurisdiction under 28 U.S.C. § 1332(a)," and, "(1) whether punitive damages would be necessary" for Plaintiff-Appellant Erick Zanetich's ("Zanetich") "amount in controversy to exceed $75,000," and "(2) whether punitive damages are available under New Jersey law." Dkt.28 at 1. This action comfortably satisfies the amount-in-controversy requirement without punitive damages.

As the party invoking the District Court's diversity jurisdiction under 28 U.S.C. § 1332, Walmart has the burden to establish the amount in controversy. Where the plaintiff makes no specific monetary demand and does not dispute the relevant facts of the removing party's assertion of federal jurisdiction, the defendant need only "plausibl[y] alleg[e]" the amount in controversy. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *accord Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc*., 989 F.2d 142, 146 (3d Cir. 1993). Zanetich made no specific monetary demand and did not dispute the facts asserted in Walmart's Notice of Removal regarding the start date, wage and hour expectations in his conditional job offer. *See generally* App.27–37; Notice of Removal ¶ 23, *Zanetich v. Wal-Mart Stores E., Inc.*, No.22-CV-5387 (D.N.J. Sept. 2, 2022), ECF No.1 ("Not. Removal"). Here, Walmart has "plausibl[y] alleg[ed]" the amount in controversy is at least $75,000, excluding punitive damages, thus satisfying 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. *Owens*, 574 U.S. at 89; *see Auto-Owners Ins. Co.,* 835 F.3d at 395; *Angus*, 989 F.2d at 146.

1.a. The amount in controversy here exceeds $75,000 based on Zanetich's claim for back pay alone. While "[f]ront pay refers to future lost wages accruing after a [decision] . . . back pay refers to lost wages already accrued as of [the date of the decision]." *Donelson v. DuPont*



*Chambers Works*, 206 N.J. 243, 251 n.9 (2011); *Gimello v. Agency Rent-A-Car Sys., Inc.,* 250 N.J. Super. 338, 367 (App. Div. 1991). To determine whether a claim for back pay satisfies a federal-jurisdictional threshold "in a back pay case in which a continuing right to employment is claimed," this Court does not "consider[ ] only the amount of back pay accrued at the time" that the federal court's jurisdiction is invoked. *Chabal v. Reagan*, 822 F.2d 349, 356 (3d Cir. 1987). Rather, the Court must consider "the total amount of back pay the plaintiff stands ultimately to recover in the suit." *Id.* at 357 (citation omitted). To hold otherwise would "produce the anomalous result" where a party could fail to invoke federal-court jurisdiction simply by "filing before the back pay due reached [the jurisdictional threshold], although recovery would [have] exceed[ed] that amount through continuing accrual of back pay during the court of the action." *Id.* at 356. Thus, in *Chabal*—a case under the Tucker Act, which confers jurisdiction to federal district courts over certain claims against the United States valued under $10,000—this Court concluded a district court lacked jurisdiction over the plaintiff's claim because the value of the "back pay" sought by the plaintiff "would exceed $10,000" "if he prevailed," *id.* at 357, although it was "undisputed" that the plaintiff "had not accrued more than $10,000 in back pay" when he "filed his complaint," *id.* at 356; *accord Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011) (calculating back pay, for jurisdictional purposes, from employee's termination "to the present").

Here, Zanetich's "total amount of back pay" that he "stands ultimately to recover" if he were to prevail in this case exceeds the $75,000 diversity-jurisdiction threshold. *Chabal*, 822 F.2d at 357; 28 U.S.C. § 1332. As Walmart set forth in its Notice of Removal—which Zanetich did not dispute, *see generally Zanetich*, No.22-CV-5387 (D.N.J. May 25, 2023)—Walmart's conditional job offer to Zanetich was to work 40 hours per week, for $19.85 per hour, starting February 7, 2022, yielding a weekly wage of $794.00 ($19.85 x 40). Not. Removal ¶ 23; *Id.*, Ex. **D**, Decl. of Sergio Rangel, Jr. ¶¶ 6–7. Approximately 104 weeks have elapsed since Zanetich's would-be start date, yielding total back pay of $82,576 as of the date of this filing ($794 x 104). *See Donelson*, 206 N.J. at 251 n.9; *Gimello*, 250 N.J. Super. at 367. New Jersey law tallies back pay through the date of verdict. *See Donelson*, 206 N.J. at 251 n.9, *Gimello,* 250 N.J. Super. at 367. Accordingly, Zanetich's claim for back pay alone satisfies 28 U.S.C. § 1332(a)'s amount-in-controversy requirement here.

b. Zanetich's claim for front pay raises the amount in controversy even higher above the diversity-jurisdictional threshold and plausibly satisfies this requirement. To award front pay, courts assess the "reasonable time period for future damages," *see Picogna v. Bd. of Educ. of Twp. of Cherry Hill*, 143 N.J. 391, 403 (1996), based on a fact-sensitive, "thoughtful balancing of . . . relevant factors," *Quinlan v. Curtiss-Wright Corp.*, 425 N.J. Super. 335, 353 (App. Div. 2012). These factors may include "'work and life expectancy,'" *id*. (quoting *Anastasio v. Schering Corp.*, 838 F.2d 701, 709 (3d Cir. 1988)), as well as "future market trends, a plaintiff's employability, and whether the plaintiff would have remained in the same position if not for the discrimination," *id.* "[T]he award must be reasonably specific with respect to duration and amount." *Id.* at 354; *see Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 88 (3d Cir. 2009). Here, in its Notice of Removal, Walmart estimated that, "[f]or example," one year of front pay for Zanetich could equal over $41,000. Not. Removal ¶ 25. Given that the length of front-pay damages that courts award vary—and can often significantly exceed one year, such as "from the date of the verdict to retirement," *Baker v. Nat'l State Bank*, 353 N.J. Super. 145, 160 (App. Div. 2002), or for ten years, *Donlin*, 581 F.3d at 88—Walmart has plausibly shown, *Owens*, 574 U.S. at 89, that the $75,000 amount-in-controversy requirement is easily surpassed with Zanetich's front pay claim.



c. The amount-in-controversy would also be met if Zanetich were granted his requested injunctive relief of reinstatement in lieu of front pay.  App.34, ¶ 3; *Grasso v. W. New York Bd. of Educ.*, 364 N.J. Super. 109, 127 (App. Div. 2003) ("Front pay is awarded instead of reinstatement."); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985).  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *accord Auto-Owners Ins. Co.*, 835 F.3d at 397–98.  Here, the value to Zanetich of his reinstatement would equal his full salary and benefits while employed—the same basis used to estimate his front pay.  As noted above, that would be $41,000 per year, meaning that after less than two years working at Walmart, Zanetich would earn more than $75,000.

d. At the absolute minimum, a combination of back pay and either front pay or reinstatement would easily satisfy 28 U.S.C. § 1332(a)'s amount-in-controversy requirement here.  Even conservatively estimated, if Zanetich prevailed his lawsuit, he could have received more than $41,000 in back pay, as well as $41,000 in front pay, totaling well over $75,000.

2. To answer the Court's second question, punitive damages are not available here.  As the Court observed in its Order, "claims for punitive damages lack foundation when they are not permitted under state substantive law."  Dkt.28 at 1 (citing *Huber v. Taylor,* 532 F.3d 237, 244 (3d Cir. 2008)).  Under New Jersey's Punitive Damages Act ("PDA"), N.J. Stat. Ann. § 2A:15-5.12, "[p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."  Here, Zanetich raised no allegation that Walmart's purported acts or omissions were accompanied by the scienter required under New Jersey's PDA.  To the extent Zanetich analogizes his purported rights under CREAMMA to those established by New Jersey's Law Against Discrimination ("LAD"), *see* Dkt.12 at 13, punitive damages under LAD are subject to the same limitations.  *See Baker v. Nat'l State Bank*, 161 N.J. 220, 229 (1999) ("Although the PDA excludes LAD actions from its cap, its general requirements for procedural and substantive fairness are mandated.").  Indeed, less than two weeks ago, the New Jersey Appellate Division underscored that punitive damages under LAD are available "only . . . in exceptional cases" involving "wanton or reckless conduct."  *Pritchett v. State,* No.A-1414-21, 2024 WL 331979, at *5 (N.J. Super. Ct. App. Div. Jan. 30, 2024) (citation omitted); *see Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 397–98 (3d Cir. 2004) ("[I]f state law denies recovery for punitive damages, the federal court would be required to disregard the value of such a claim asserted to be included within the jurisdictional amount.").

Sincerely,

/s/ Misha Tseytlin
Misha Tseytlin
CC:      All Counsel Of Record (via ECF)